CARL ALBERT BERTHOLD JOHN, Appellee, *vs.* CARL A. JOHN.—(LILLA JOHN, Appellant.)

*Opinion filed June 16, 1926—Rehearing denied October 7, 1926.*

1. TRUSTS—*what is not proper evidence to defeat a resulting trust.* In a suit to have a resulting trust declared after the death of the party in whose name the title was taken, statements by the latter tending to show that the property belonged to her are not proper evidence to show the non-existence of the trust, where the complainant was not present and took no part in the conversations in which the statements were made.

2. SAME—*when a resulting trust arises.* Where one party's money is invested in land and the title is taken in the name of another a resulting trust arises by operation of law at the instant of the taking of the title, independent of any agreement of the parties, and it is immaterial whether the purchase was made and the money paid by the trustee or the *cestui que trust.*

3. SAME—*advancement is presumed where the title is taken in name of wife—intention.* Where a husband purchases real estate and takes the title in his wife's name the presumption is that it was intended as a gift or advancement; but this is a mere presumption of fact, which may be overcome by evidence of a contrary intention.

4. SAME—*when resulting trust arises in property taken in name of wife.* Where the evidence shows conclusively and beyond reasonable doubt that in taking title in the name of the wife it was not the intention that the wife should take the property as a gift or advancement but that it should be the property of the husband,

equity will give effect to such intention and decree a resulting trust in favor of the husband.

5. SAME—*parol agreement will not preclude a resulting trust—evidence.* While neither an express trust nor a resulting trust can be created by parol agreement, yet where the transaction is such that at the moment the title passes a resulting trust would arise in the absence of any parol agreement, such agreement will not prevent a trust resulting; and the intention of the parties may be shown by proof of the parol agreement, in accordance with which the title is taken.

6. SAME—*circumstances may be shown to excuse the delay in bringing suit to declare resulting trust.* Equity regards stale claims with disfavor and will refuse relief after inexcusable delay, but in a suit to have a resulting trust declared, circumstances tending to explain or excuse delay in bringing the suit may be considered in determining whether the complainant should lose his remedy.

7. SAME—*when husband is not guilty of laches in bringing suit to declare resulting trust.* The intimate relations between husband and wife, his confidence in her and the reasons for the trust are all proper to be considered in determining whether the defense of *laches* should be allowed to prevail against his suit to have a resulting trust declared in property taken in his wife's name, and where the evidence shows that the wife, up to a very short time before her death, recognized the existence of the trust, the husband is not guilty of *laches* where he files his bill within a few months after her death, as he is not required, in such case, to institute suit to protect his interest during her lifetime.

APPEAL from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding.

WILLIAM REEDA, CHARLES E. PEACE, FREDERIC L. GOFF, and WILLIAM JAFFE, (AMOS W. MARSTON, of counsel,) for appellant.

SILBER, ISAACS, SILBER & WOLEY, (FREDERICK D. SILBER, MARTIN J. ISAACS, and CLARENCE J. SILBER, of counsel,) for appellee.

Mr. JUSTICE HEARD delivered the opinion of the court:

Helena John died testate in Danzig, Germany, about July 23, 1922, leaving her surviving Carl Albert Berthold John, (also called Berthold John,) appellee, her husband,

and her son, Carl A. John, as her only heirs-at-law. Appellant, Lilla John, is the wife of the son, Carl, from whom she had been living separate and apart for some time prior to the filing of the bill herein. Helena John's last will and testament was admitted to probate in the probate court of Cook county November 10, 1922. At the time of her death she had title of record to certain real estate, which in these proceedings are referred to as the Winthrop avenue property and the Arcadia Terrace lots. By her last will and testament she devised these properties to Carl and Lilla John, and provided that in the event of the sale of said real estate before her decease they should receive the sum of $60,000 in lieu thereof. At the time of her death the property known as the Wilton Hotel, on Clifton avenue, stood in the names of Berthold and Helena John as joint tenants and was by the will devised to the husband. February 19, 1923, appellee filed his bill of complaint in the superior court of Cook county for the purpose of establishing a resulting trust in the Winthrop avenue and the Arcadia Terrace properties, making Carl A. John, individually and as administrator with the will annexed of the estate of Helena John, deceased, Lilla John, and Martha Ernst, a sister of deceased, to whom a bequest of $2000 was made in Mrs. John's will, parties defendant. The defendants answered, denying the existence of the resulting trust. The cause was referred to a master in chancery, evidence was taken, and the master found and reported to the court that at the time of the purchase of the Winthrop avenue property and at the time of the purchase of the Arcadia Terrace lots a resulting trust was created in each of said properties in favor of appellee; that appellee furnished the money with which said properties, and each of them, were purchased, and that at the time of the purchase it was the intention of appellee to take the title to each of said properties in the name of Helena John as the property of appellee and for his use and benefit; that in taking title to the properties it was not the

intention of appellee to make a gift of said properties, or either of them, to Helena John, and that at the time of her death appellee was, and now is, the real and equitable owner of all the real estate involved in this proceeding. The master found that appellee was entitled to all the relief prayed for in his bill of complaint and recommended that a decree be entered accordingly. Exceptions to the master's report having been overruled by the court, a decree was entered in accordance with the prayer of the bill, which ordered that Carl A. John, Lilla John and Martha Ernst execute and deliver to appellee a good and sufficient quit-claim deed to the Winthrop avenue property and the Arcadia Terrace lots within thirty days from the date of the decree, and that in the event of their failure so to do such deed be made by one of the masters in chancery of the court. From this decree Lilla John has perfected an appeal to this court.

It is contended by appellant that the evidence in the case was not sufficient to warrant the master in chancery in finding that a resulting trust existed in favor of appellee and that the court should have dismissed appellee's bill for want of equity.

The evidence shows that appellee was born in Breslau, Germany, in the year 1869 and came to the United States about 1892. He was married to his deceased wife, Helena, at Milwaukee, Wisconsin, about the year 1894. He was a thrifty, hard-working, industrious man, and at the time of his marriage was employed as a cooper during the day and worked as a sausage-maker at night. For a time he maintained a meat market in Milwaukee. At a time more than twenty years prior to the filing of the bill of complaint herein he moved from Milwaukee to Chicago, in which city he and his wife and son thereafter made their home. In Chicago he followed the occupation of janitor for flat and apartment house buildings and had the care of a large number of such buildings. The family lived in the basement or in apartments where he was employed as janitor. He de-

voted himself assiduously to his work, and as he was thrifty and economical, accumulated money. He had received an inheritance, the source or exact amount of which is not disclosed by the evidence but which was between $500 and $2000. In the early part of 1909 he conceived the idea of buying some lots and building thereon a flat-building for rental purposes. A real estate agent took him to see the Winthrop avenue lots. After taking his wife to see the lots he made a deposit on their purchase price and made an engagement to meet the agents of the property and close the transaction. The lots were bought from the agents of William Loehde, the owner, for $5500. Loehde testified that the purchase price of the lots was $5500; that of this amount $3300 was paid in cash; that the balance was represented by three mortgages,—one for $900 and one for $700, both executed by Loehde, which were then liens upon the premises, and one mortgage for $600, executed by Mrs. John as a part of the purchase price; that the cash payment of $3300 was paid by John to the witness; that John produced from his pocket $3300 in currency, which he laid on the table in front of Mrs. John; that the Johns and the witness were all sitting at the table; that the Johns counted over the money and Mrs. John handed it to him; that the deed was made out in the name of Mrs. John at the direction of the real estate man; that John, in the presence of Mrs. John, stated that the reason he wished his wife to have the title in her name was because she would have to look after the business affairs of the property, as he was too busy with his janitor work to give the same proper attention and that she was more capable of transacting the business; that witness personally collected the principal and interest from all these mortgages of John; that in making these collections he would call at the home of John and his wife at least once every six months and that John always paid him the money; that he usually got it out of a bedroom adjoining the kitchen; that Mrs. John sometimes

brought the interest on the loan to his office, but the principal he always collected at the home of the Johns and that he always got it from John; that on one occasion the Johns applied to him to finance a loan of $13,000 to be used in the erection of a six-flat apartment building; that Mrs. John, as an inducement for him to finance the loan, stated that there was nothing for him to be afraid of in the re-payment of the loan because her husband was making as high as $500 to $600 a month; that witness advised them not to build until they had more money, and John said that he was going to build anyway,—that he could manage the matter; that Mrs. John told witness more than once that the reason she took the title to the property was because John was too busy and could not attend to it; that she said, "Oh! This is his property and I am looking after the affairs."

At the time of the purchase of the Winthrop avenue lots Berthold John employed an attorney to examine the title to the lots and to furnish him an opinion of title, which opinion, addressed to John at Chicago and dated April 22, 1909, appears in evidence. In the fall of 1909 a six-flat building was built upon the premises. To pay for this building John sold a $4500 mortgage loan that he held from H. O. Stone & Co. and made a building loan from the American Bond and Mortgage Company for $12,500, secured by a mortgage upon the premises. A second flat-building on the Winthrop avenue property was built about 1915. To pay the cost of this building John procured a loan from the American Bond and Mortgage Company for $17,500, secured by a mortgage upon the premises. After the construction of the apartment building the leases of tenants were taken in the name of Mrs. John, and the rents were sometimes collected by her and sometimes by John, and these rents, together with John's earnings as janitor of other apartments, with the exception of two dollars or three dollars a week for his own personal expenditures, were turned over to Mrs. John and were kept together in

a steel box in one of the bed-rooms, and these moneys were used to pay the running expenses of the buildings, taxes, repairs and the installments due upon the mortgages.

In May, 1915, a contract was entered into between W. F. Kaiser & Co. and Mrs. John for the purchase of the Arcadia Terrace lots, and on March 1, 1920, a deed to Mrs. John for these lots was executed by the State Bank of Chicago, as trustee for the owner. With reference to this transaction Carl Radacke testified that he acted as the agent in the sale of the Arcadia Terrace lots; that he took appellee out to see the lots and that appellee paid him a deposit on the purchase price; that at the time the contract of purchase was made out in the name of Mrs. John he asked appellee in whose name he was taking title; that appellee told him he would take it in the name of Mrs. John; that Mrs. John said, "That is right; he takes all of his titles in my name;" that he asked appellee, in the presence of Mrs. John, why that was, and appellee told him he was an alien and did not wish to take title in his individual name and wished to take the title in the name of Mrs. John. The purchase price of the lots was $1650,—$150 on delivery of the agreement and the balance in monthly installments of $15 each on the first of each month, with interest at six per cent.

In the year 1919 appellee saw an advertisement of a hotel business and caused Carl A. John to answer the advertisement, as a result of which the furniture, furnishings and lease of the hotel business known as the Wilton Hotel were purchased for $4000. This was secured by a mortgage on the Winthrop avenue property. The furniture and lease on the Wilton Hotel were later sold for a consideration of $9000. Shortly after the sale of the furniture and the lease of the Wilton Hotel the real estate described as the Clifton avenue property was purchased for the sum of $22,000 and the title thereto taken in the name of Berthold and Helena John, as joint tenants. It does not appear

from the evidence what, if any, liens or encumbrances now exist on any of these properties. Martha Ernst, a sister of deceased and one of the defendants, testified that Mrs. John never inherited any money; that so far as she knew she did not receive any earnings for work outside of her family but kept house for herself and her husband and took care of their son; that in May, 1916, the Johns were living in one of the apartments at 5247 Winthrop avenue; that she asked Mrs. John how they got the money with which they acquired the property where they were living, and that Mrs. John informed her that appellee had made a lot of money and was very saving and denied himself everything, working day and night to accumulate wealth; that the property was all in her name; that the reason therefor was that appellee did not speak English very well and was so overburdened with his work that he could not look after the property, so she had taken title for him and managed the same for him; that on several occasions while living at the John home she heard appellee say to Mrs. John that he intended to take over his property and look after the same himself as soon as he could so arrange his affairs that he was not overburdened with work; that Mrs. John told witness that as soon as she came back from Europe John wanted to go to Europe, and after their return he would take the property over again for himself and build.

Carl A. John, one of the defendants, testified that his father took Mrs. John and himself to look at the Winthrop avenue lots before they were bought, and that appellee paid a deposit on the purchase price and made an agreement with the agents of the property to consummate the sale; that he knew the source from which the money came to buy the lots and to build the first six-flat apartment building; that it came out of the earnings of his father, and that his father had accumulated money and purchased a mortgage from H. O. Stone & Co. for the principal sum of $4500; that he knew that his father obtained a building loan from the

American Bond and Mortgage Company for the sum of $12,500; that he had been present with his father at the time the loan was made, and he knew that the money from the payment of the H. O. Stone mortgage and from the building loan were used in the construction of the apartment building; that on many different occasions he heard Mrs. John make the statement to various persons that his father was the owner of the property; that occasionally his father would be dissatisfied and criticise Mrs. John for something that she had done, and that she on such occasions would tell him that if he did not like the way she was handling his affairs he had better take them over himself and handle them in his way; that she was doing the best she could and that if he did not like it he should handle it himself; that his father replied that he could not handle things now because he had to be on the job too much, but that if he ever got so he did not have to work so hard he would try to handle things himself.

Caroli Gigliotti, an attorney, testified that he was a tenant in the building at 5247 Winthrop avenue for twelve years; that appellee did practically the entire work in the management and operation of the building; that in June, 1911, he talked with Helena John with relation to the ownership of the property; that she came to him with a lease to sign; that he asked her if appellee was the owner; that she told him he was the owner but preferred not to manage the property and that the title was placed in her name for this reason; that the money appellee made was given to her for investment for him; that she invested such earnings in the property, paying mortgages thereon, and that it was a struggle to pay the interest, and that it was only her husband's earnings and the income from the property that could meet necessary expenses.

There is no evidence in the record from any witness having knowledge thereof that Helena John at the time of her marriage had accumulated any money from any source.

There is no evidence in the record that at any time prior to 1909, after her marriage, she ever did any work for any person for which she received a monetary compensation. There is evidence in the record that while her time was mostly occupied with household duties and taking care of their child she did at times assist her husband in doing some of the janitor work, and there is evidence that in 1910 she occasionally did washing and cleaning for one of the witnesses who was a tenant in one of the buildings for which appellee was janitor and that she received as compensation two dollars a washing. Witnesses for appellant testified as to the management of the Wilton Hotel by Mrs. John and as to her claim of ownership of that property. Other witnesses testified as to the wages paid janitors from 1908 to 1915. Other witnesses for the defendant testified to statements of Mrs. John as to her ownership of the property, especially of the Wilton Hotel property, and that she claimed that all the property which they had, including the Wilton Hotel, belonged to her. There is evidence of a statement made by Mrs. John that when she first got married she worked hard; that she worked for her husband, in a laundry and as a servant maid, and worked enough to save money to buy her first piece of property. There is no evidence that appellee took any part in this conversation or made any reply to this statement. There is evidence that Mrs. John, when asked by policemen if the hotel property was hers, stated that everything they had belonged to her; that she had worked continuously and earned money during her married life with appellee, and that it was with this money that she bought this property and for that reason she was transacting the business; that it was in her name, only, and that she was going to dispose of it in whatever manner she wished, and that appellee had no claim on any of her real estate or any real estate which they possessed. There is no evidence that the appellee was present when these statements were made and they are not evidence

tending to show the non-existence of a resulting trust. (*Bennett* v. *Stout,* 98 Ill. 47; *Frewin* v. *Stark,* 319 id. 35.) There is no evidence in the record of any statement or admission of appellee tending to show that any of these properties were purchased with funds belonging to Mrs. John or that in taking title in her name he intended making her a gift. The nearest approach to anything of this nature is the testimony of two policemen, to the effect that when they went to the hotel to secure pledge cards for a candidate for mayor, which seems to have been their chief occupation at that time, appellee said: "You leave those here with my wife and transact that with her, because she is the boss and handles all this business here; I have nothing to do with it." It is to be noted that the hotel was first occupied by the Johns under a lease running to them jointly; that they derived their title to the fixtures and furniture from a bill of sale running to them jointly, and that when subsequently they purchased the real estate on which it was situated they took title thereto "as joint tenants and not as tenants in common."

A resulting trust does not arise from or depend upon any agreement between the parties. As its name implies, it is independent of any contract and is raised by the law upon a particular state of facts. It results from the fact that one man's money has been invested in land and the conveyance taken in the name of another. It is immaterial whether the purchase was made and the money paid by the trustee or the *cestui que trust.* If the fact exists, by mere operation of law a trust is raised in favor of the party whose money was used to purchase the land, either to the whole or his equivalent portion thereof. (*Bruce* v. *Roney,* 18 Ill. 67; *Baughman* v. *Baughman,* 283 id. 55; *Frewin* v. *Stark, supra.*) A resulting trust is created, if at all, at the instant of the taking of the title. (*Lord* v. *Reed,* 254 Ill. 350.) Where a husband purchases real estate with his money and takes the title in his wife's name the presump-

tion is that it was intended as a gift or advancement. (*Fry* v. *Morrison,* 159 Ill. 244; *Maxwell* v. *Maxwell,* 109 id. 588.) This is a mere presumption of fact and is not to be considered as evidence or weighed as evidence where there is evidence of a contrary intention. (*People* v. *Cochran,* 313 Ill. 508.) Whether or not in such case a purchase by the husband in the name of the wife is a gift or advancement or whether a resulting trust arises is purely a question of intention. (*Taylor* v. *Taylor,* 4 Gilm. 303; *O'Donnell* v. *O'Donnell,* 303 Ill. 31.) Where the evidence in the case shows conclusively and beyond a reasonable doubt that in taking the title in the name of the wife it was not the intention that the wife should take the property as a gift or advancement but that it should be the property of the husband, a court of chancery will give effect to such intention and decree a resulting trust in favor of the husband. *O'Donnell* v. *O'Donnell, supra.*

It is contended by appellant that the arrangement sought to be proven would constitute an express trust, if any, and that not being in writing it would be void as being contrary to the Statute of Frauds of this State, which provides that "all declarations or creations of trusts or confidences of any lands, tenements or hereditaments, shall be manifested and proved by some writing signed by the party who is by law enabled to declare such trust, or by his last will in writing; or else they shall be utterly void and of no effect: *Provided,* that resulting trust or trusts created by construction, implication or operation of law, need not be in writing, and the same may be proved by parol." (Smith's Stat. 1925, chap. 59, sec. 9.) While neither an express trust nor a resulting trust can be created by parol agreement, yet where the transaction is such that at the moment the title passes a resulting trust would arise in the absence of such parol agreement, such agreement will not prevent a trust resulting, (*Smith* v. *Smith,* 85 Ill. 189; *Wallace* v. *Carpenter,* id. 590; *Williams* v. *Brown,* 14 id. 200;) and

the intention of the parties in the premises may be shown by proof of the parol agreement in accordance with which the title is taken. *Furber* v. *Paige,* 143 Ill. 622.

It is contended by appellant that the evidence shows that appellee caused the title to be taken in the name of Helena John with intent to evade and violate the statute of this State with reference to the holding of real estate by aliens, and that a resulting trust could not, therefore, arise. The evidence in the case does not show such intention. The statute did not prohibit an alien from acquiring and holding title to land, but it expressly provided that aliens could acquire and hold title in fee simple or otherwise to lands and alienate the same. It was only the continued holding of title after six years from the time of acquisition that was sought to be prevented by the statute. It was only in case that the alien did not become a citizen of the United States within six years after the acquisition of the property that the State's attorney of the county in which the lands were situated was authorized to commence proceedings for the forfeiture of the property, and it was made a good defense to any such proceeding that prior to the time the same was commenced the alien had become a citizen of the United States or had conveyed the lands in good faith to a citizen of the United States. (Alien act of July 1, 1897.) Appellee was naturalized in the circuit court of Cook county October 1, 1914, less than six years after the acquisition of his first piece of property. By stipulation of the parties his original certificate of naturalization was made an exhibit in the cause.

It is contended by appellant that appellee having taken no action to establish his rights during the lifetime of Helena John he is now barred by *laches* from maintaining his claim of a resulting trust in the properties. While equity regards stale claims with disfavor and a court of equity will refuse relief after inexcusable delay, yet in determining whether appellee should be deprived of his rem-

edy on account of delay in bringing this suit, circumstances tending to explain or excuse such delay should be considered. There was no adverse possession in the wife and their occupation of the premises was joint. The intimate relations between husband and wife and his confidence in her and the reasons for the trust are all properly to be considered in determining whether the defense of *laches* should be allowed to prevail. (*Wright* v. *Wright,* 242 Ill. 71.) The evidence shows that Mrs. John recognized the existence of the trust just shortly before her departure for Europe, and expressed her intention of turning the title over to her husband after he should have returned from a trip to Europe. It also shows that at all times he had the utmost confidence in her, and it was but a very short time before her death that she expressed her intention of not complying with the terms of the trust. They had but one child, who was the natural object of their bounty. The bill was filed within a few months of Mrs. John's death. Under the circumstances as they are shown by the evidence in this case appellee was not required at his peril to institute suit to protect his interest during her lifetime.

In our opinion the evidence in this case conclusively shows, beyond a reasonable doubt, that the properties in question in this suit were purchased with the funds of appellee, the title taken in the name of Helena John, and that it was not the intention of the parties that in so doing appellee was making a gift or advancement of the same to his wife, and she must therefore be held to have taken the title as trustee for her husband. *Bachseits* v. *Leichtweis,* 256 Ill. 357.

The decree of the superior court must therefore be affirmed.

*Decree affirmed.*