(No. 30672.—

REATHER MAE DEAN, Appellee, *vs.* MINOR JAMES DEAN *et al.*—(MINOR JAMES DEAN, Appellant.)

*Opinion filed November 18, 1948.*

T. R. JOHNSON, of Kankakee, for appellant.

EVA L. MINOR, of Kankakee, for appellee.

Mr. CHIEF JUSTICE FULTON delivered the opinion of the court:

This suit was filed in the circuit court of Kankakee County on July 26, 1947, by the appellee against the appellant, Minor James Dean, and others, for partition of certain real estate located in the city of Kankakee. On the following day Minor James Dean filed a complaint for divorce from the appellee on the ground that she had a living husband at the time of their marriage from whom the appellee had never been divorced. In his complaint for divorce, the appellant prayed that he be declared to be the sole owner of the real estate in controversy.

The two cases were consolidated and tried before the court. On hearing, the court granted a decree of divorce to appellant and no appeal was taken from that order. The partition suit was taken under advisement by the court and later he granted a decree of partition in favor of appellee.

The facts leading up to the separation between the parties are almost wholly in conflict, which necessitates a recital of the same somewhat in detail. Appellant testified that he met the appellee in a small town in Missouri, and on June 16, 1940, they went through a marriage ceremony in the State of Missouri where they lived together as man and wife for a period of two years; that during that period she worked in the cotton fields and he tended bar; that the money they earned and saved was used to buy a car. In 1942 they moved to Kankakee and in June, 1943, he bought a house in that city for $1700; that they made a down payment of $800, of which his mother sent him $500. The title to the property was taken in the name of appellant and appellee as joint tenants. After the property was paid for he built a second house on the lot, doing the con-

struction work himself, except for a small bill for plastering and plumbing, and paid for those bills out of his own earnings.

He further testified that he was employed by the Du Pont Company and was paid in 1943, $2140.42, in 1944, $1835.24 and in 1945, $2553.05; that during the same period appellee was employed as a housemaid at a salary of from $10 to $18 per week; that he paid the entire purchase price for the real estate out of his own earnings and that appellee contributed nothing toward the purchase of the property; that he did not know at the time the property was purchased the appellee was not lawfully married to him and that he had the title to the real estate issued in the names of the two because he thought the appellee was his lawful wife.

In support of her complaint the appellee testified that when they moved to Kankakee they did not have $5 between the two of them; that she started to work in a restaurant at once and got paid every day, while her husband was paid only twice a month; that they made an arrangement whereby she would buy the groceries and when he received his check she would deposit it in their joint savings account at the City National Bank; that she did buy all of the groceries and that the home was purchased with the money both of them saved while working; that the down payment for the home was paid out of their joint savings account and that they borrowed a balance of $1000 from a building and loan association; that this loan was paid off within a year and out of the savings of both of them; that if appellant's mother contributed anything to their saving account, appellee never knew anything about it; that the second house built on the lot was also paid for out of the joint savings account; that appellant had a daughter by a former marriage who came to live with them in 1943; that besides doing housework away from home, appellee did her own housework after she got home; that lots of

times she would get up at three or four in the morning to get her work done before going to work at 8:30; that she always got up and prepared appellant's breakfast before going to work; that his daughter went to school and appellee washed and ironed for her and cooked her meals; that appellee left appellant on January 7, 1947, because he would get drunk and tear off all of her clothes; that while they were paying for the house he did not drink but after it was paid for he started drinking again and abusing her; that she was previously married to one Matthew Polk and that her husband knew that Polk was living at the time of her marriage to appellant; that Polk had visited the town in Missouri where appellee and appellant were living after their marriage and that Polk would go to the place where appellant was tending bar; that the house was paid for in 1944, and the joint deposit increased until it reached $1436.98; that this amount was withdrawn by appellant on July 1, 1946, and deposited in a savings account in his and his daughter's names.

The court found the issues for the appellee and specifically found that appellee had contributed a substantial amount toward the purchase of the home and that the taking of the title in joint tenancy at the time of the purchase was the desire and intention of both appellant and appellee. The decree, accordingly, found that the appellee was entitled, by virtue of her contribution to the purchase price and the intention of the parties at the time of taking the deed, to an undivided one-half interest in the property in controversy and entered the usual orders for partition and division of the same.

The appellant contends that the testimony does not support the findings in the decree and that because he paid all or practically all of the purchase price, a resulting trust immediately arose in his favor in proportion to the relative amounts contributed. Appellant insists that the case of *McDonald* v. *Carr,* 150 Ill. 204, is authority for his conten-

tion. That case held in substance that where real property is purchased by one person and the legal title is taken in the name of another who is a stranger and not standing in the relationship of a lawful wife or child, a resulting trust immediately arises from the transaction, and the person to whom the land is conveyed will hold it in trust for the person who paid the purchase money. The facts in that case disclose that Katharine McDonald and Michael McDonald were not legally married, because he had a wife living at the time of the pretended marriage. There was no controversy but that she furnished the entire consideration for the purchase of the property in question, the title to which was taken in McDonald's name. There was no proof in the record of any agreement between the parties or of any intention as to why the deed was made to McDonald and, therefore, the court held that the legal presumption was that she intended the conveyance for her own benefit. As she paid the purchase money and took the title in the name of a stranger, a resulting trust arose.

If the testimony of the appellee is worthy of belief, that case is clearly distinguishable from the situation here. In the recent case of *Tuntland* v. *Haugen,* 399 Ill. 595, this court said: "The burden of proof rests on the parties seeking to establish a resulting trust and the evidence must be clear, strong, unequivocal, unmistakable, and so convincing as to lead to but one conclusion. [Citing cases.] If a reasonable explanation of the evidence adduced may be made upon any theory other than the existence of a resulting trust, the evidence is insufficient to support a decree declaring and enforcing a trust."

The claim of appellant that he should be paid for work done upon the joint property of the parties was apparently an afterthought, but in any event, it is determined upon the weight of the evidence. All of the material facts being in absolute dispute, the ruling of the chancellor is entitled to careful consideration. He saw and heard the witnesses

and is better qualified to judge of the weight to be given their testimony than is a court of review. The rule in chancery cases is that where the evidence is conflicting and witnesses are heard in open court, as in this case, an error in finding as to the facts should be clear and palpable to authorize a reversal. *Rothenberg* v. *Rothenberg,* 378 Ill. 242.

From a thorough review of the testimony in the record, we cannot say that the findings of the chancellor that the appellee contributed a substantial amount to the purchase of the property, and that it was the intention of both of the parties at the time of taking the deed to place the title in joint tenancy, are clearly and palpably contrary to the evidence. We do not find any other error in the findings of fact or the conclusions of the chancellor, and the decree of the circuit court of Kankakee County is affirmed.

*Decree affirmed.*