(No. 31953.—

Gertrude McCabe *et al.*, Appellants. *vs.* Harry J. Hebner *et al.*, Appellees.

*Opinion filed November 27, 1951—Rehearing denied Jan. 21, 1952.*

PAUL G. SULLINS, of Oak Park, for appellants.

ANDREW J. FARRELL, of Chicago, for appellees.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

This is a suit seeking to impress two lots in the city of Chicago, upon which is located a three-story 21-family apartment building, with a resulting trust. The suit was instituted by plaintiffs, Gertrude McCabe and Marion Fitzpatrick, sisters, against defendants, Grace Hebner, another sister, and Harry J. Hebner, her husband, and Jack Joseph Ibold, a nephew of the other parties hereto, a son of a predeceased brother. The cause was heard by the master in chancery to whom it was referred, after being brought to issue upon the amended complaint, the amended answer thereto of defendants Grace Hebner and Harry J. Hebner and the separate answer of the defendant Jack Joseph Ibold. The master made his report recommending a decree finding the issue for the defendants Hebner and against the plaintiffs, McCabe and Fitzpatrick, and made no specific finding as to the defendant Ibold, and assessed costs two thirds against the plaintiffs and one third against the defendants. To such report 294 objections were filed, 291 by plaintiffs and 3 by the defendants Hebner, which objections were by the court ordered to stand as exceptions. Plaintiffs were given leave to, and did, file 6 additional exceptions to such report. The court below sustained plain-

tiffs' exception number 292 by allowing a small reduction in master's fees and defendants' exception number 2 by substituting a finding of fact, overruled all other exceptions of the parties, found the issues against the plaintiffs and in favor of the defendants Hebner and entered a decree dismissing the amended complaint for want of equity. From this decree plaintiffs appeal generally, and the defendants Harry J. Hebner and Grace E. Hebner appeal from that portion assessing one third of the costs against the defendants.

The lots in question, known as the Greenview property, were conveyed to Harry J. Hebner and Grace E. Hebner, as joint tenants, by a quitclaim deed executed and placed in escrow with the Chicago Title and Trust Company on March 16, 1933. After certain objections to the grantors' title had been met to the trust company's satisfaction, the deed was delivered and recorded on May 2, 1934. The defendants Harry J. Hebner and Grace E. Hebner contend that the Greenview property was a gift to them from John J. Mehlem, father of Mrs. Hebner, while the plaintiffs allege that the Hebners took the legal title but that a trust resulted in favor of John J. Mehlem to the entire interest in the property. Mehlem died intestate on May 9, 1945, and plaintiffs claim that they, the defendant Grace E. Hebner and the defendant Ibold are the owners as heirs of Mehlem.

Briefly, the facts leading up to the conveyance are as follows: John J. Mehlem, on March 13, 1930, purchased a $70,000 note secured by a trust deed on the Greenview property, through his attorney, Raymond A. Cavanagh. By January 6, 1933, the note had been defaulted and Mehlem instructed one Charles R. McCabe, husband of the plaintiff Gertrude McCabe, and the defendant Harry J. Hebner to seek a settlement without foreclosure. As a result of a conference in January, 1933, between McCabe, Hebner, Cavanagh and the owners and mortgagors, a tentative agreement was reached but, when submitted by mort-

gagors in writing, it was found to be unacceptable. After a further conference, another agreement was prepared and executed on March 16, 1933, by Harry J. Hebner and the owners, whereby $1000 was to be paid for the equity, the note and interest notes secured by the trust deed were to be cancelled and the property was to be conveyed by quit-claim deed to the Hebners. On the same date an additional memorandum of agreement was executed by the Hebners and the owners relating ownership of the notes by the Hebners and providing for their cancellation upon delivery of the deed. On May 2, 1934, the day the transfer was completed, the notes were cancelled and legal title was vested in the Hebners as joint tenants.

John J. Mehlem entered into an unsuccessful marriage in 1927, which resulted in a divorce in 1935. He had moved to the State of Florida, purchased a home there, lived in that State most of the time during the transactions in question and there died intestate in May, 1945. He had considerable property, the disposition of which may have been a bone of contention between him and his wife. His correspondence with his daughters and their husbands clearly indicates that he was anxious that his wife learn nothing about his business affairs. He showed great affection for, and liberality to, his family, with the exception of the grandson, who had been adopted by the second husband of his deceased son's wife. He made various gifts to Marion Fitzpatrick, including $10,000 toward a home in Glencoe, a $30,000 note upon which she realized $10,000, certain furniture and a car, in addition to smaller gifts to Marion's children. He gave Gertrude McCabe a home in Indiana, a valuable lot in Winnetka and a property in Chicago, the total value of which was between $20,000 and $30,000. He made lesser gifts of substantial value to Grace E. Hebner, beginning in the year 1922.

Mehlem placed great reliance in his sons-in-law, McCabe and Hebner, and they acted as his agents in a number

of transactions. It is plain from the record that his great distance from Chicago, the situs of most of his investments, was the primary reason for delegating authority to them. He had a clear grasp of his business affairs and gave minute directions, instructions and advice. In fact, his business judgment seems to have been considerably more acute than that of those who were handling the details for him. He kept up a constant stream of correspondence and a number of his original letters written in longhand between February, 1933, and January, 1940, are in a bold, legible hand and indicate an alert, clear mind.

Plaintiffs devote much argument to the question of the relationship between Mehlem and Hebner, as to whether it was of a confidential or fiduciary nature. This would indicate that they seek a constructive rather than a resulting trust, although plaintiffs' counsel, in an objection to one of the findings in the master's report, stated specifically, "This is a resulting trust case, not a constructive trust case. Plaintiffs have not pleaded any theory of fraud or undue influence." The pleadings bear out their statement. While there was a special confidence shown in Hebner, the record shows no domination or influence by him over Mehlem.

Admittedly, the $1000 consideration for the purchase of the equity was paid from the funds of Mehlem, as was the title company's fee. Furthermore, there is no contention in the record that the Hebners bought the property or the note and trust deed. It is evident, therefore, that they either held title for the convenience and benefit of Mehlem, in which event the property was impressed with a resulting trust in favor of Mehlem, or it was a gift to them.

The law with respect to resulting trusts is well settled. A resulting trust does not depend on contract or agreement but is founded on a presumed intent which arises out of the acts of the parties. (*Tuntland* v. *Haugen,* 399 Ill. 595; *Kane* v. *Johnson,* 397 Ill. 112.) In its most common appli-

cation, a resulting trust arises from the fact that one person furnishes the consideration for the purchase of land while the conveyance is taken in the name of another. The burden of proof rests on the parties seeking to establish a resulting trust, and the evidence must be clear, strong, unequivocal, unmistakable and so convincing as to lead to but one conclusion. (*Houdek* v. *Ehrenberger,* 397 Ill. 62; *Jones* v. *Koepke,* 387 Ill. 97; *Hille* v. *Barnes,* 399 Ill. 252; *Heineman* v. *Hermann,* 385 Ill. 191.) Where land is purchased by a husband and title is taken in the name of his wife or child a presumption obtains that the property was conveyed to the wife or child as a gift or advancement. This presumption is not conclusive and may be rebutted by proof, but the burden of proof is upon the party seeking to establish the resulting trust and the evidence necessary to overcome the presumption must be clear, convincing and satisfactory. *Cook* v. *Blazis,* 365 Ill. 625; *Houdek* v. *Ehrenberger,* 397 Ill. 62.

An examination of the statements of Mehlem contained in letters from him to Harry J. Hebner and Grace E. Hebner is very illuminating as to his intentions. These letters are definitely competent as admissions against interest. (*Hoffman* v. *Stephens,* 269 Ill. 376; *Dodge* v. *Thomas,* 266 Ill. 76.) Excerpts and references from such letters have been quoted and discussed in the arguments of both parties. We have carefully read and considered each individually, and the series of letters in their entirety. It is apparent therefrom that Mehlem was at first undecided what to do with the property and appeared to have been wavering between keeping it and making gift of the fee and reserving the income. It is equally apparent that his final decision, made prior to the time of the execution of the contracts in March, 1933, was that he intended that the property become the property of the Hebners eventually, and he to retain the income during his lifetime. The remaining question therefore, is whether his intention was

carried out and resulted in the consummation of a gift or advancement.

In a letter from Mehlem to Hebner dated March 1, 1933, he said, in part, "Don't forget to go over your title very carefully and if it is a good title brought up to date— *record your deed at once,* so that they can not slip in anything which might cloud your title," and again in a letter dated May 8, 1933, he said, "Am also taking it for granted that the deed up in escrow shows title in you and Grace— don't let the deal go through unless it does." When the transaction was closed the title papers were placed in Mehlem's deposit box and upon his learning of that he insisted that the Hebners get the deed and other title papers and place them in the Hebner box. He showed a natural interest in the property since he was to get the income, and made various inquiries about the collection of rents, payment of taxes and insurance. The income was not large enough to pay accumulated taxes and he insisted that such taxes be paid. He finally requested that the taxes be paid from the proceeds of the sale of stock previously given to the Hebners by him. It developed that they had sold the stock contrary to the wishes of Mehlem and it was not available for the purposes of paying taxes. Hebner did raise funds for that purpose from other sources to add to rentals received from the building, and, from the combined funds, finally cleared the delinquent taxes.

Various amounts of income were paid by the Hebners to Mehlem from time to time. Expenses, such as insurance, costs in eviction suits and maintenance of the property, were paid from his funds. Plaintiffs argue that this is evidence of the intention of Mehlem to retain the equitable title. In *Houdek* v. *Ehrenberger,* 397 Ill. 62, at page 67, we stated, "While the parties exhibit disagreement as to the weight to be accorded such evidence, the rule of law is simply stated. Where, by or at the direction of a parent, a deed is executed to his child, the facts that the parent

occupied the premises, paid taxes and made improvements, although some evidence of the absence of an intention to make a gift, are neither sufficient to overcome the presumption of a gift nor inconsistent with the theory of an advancement. *Hartley* v. *Hartley,* 279 Ill. 593; *Dorman* v. *Dorman,* 187 Ill. 154; *Pool* v. *Phillips,* 167 Ill. 432."

In addition to Mehlem's letters, the testimony of Martha Brussaw, his housekeeper for many years, must be considered. She stated that in April, 1934, and continuing to his death, she had daily conversations with him, and that he told her at that time and repeatedly thereafter, that the Greenview property had been given to Harry and Grace so that they would have a "nest egg." Similar statements were made by him many times in which he referred to the Greenview property as "Grace's property." She also testified that when he was considering making a will, he stated he had given everything away and that there was no purpose in making a will.

The issue was somewhat confused by another gift which was made to the Hebners after the gift of the property. While Mehlem reserved the income therefrom originally, in a letter to Grace Hebner dated October 1, 1934, he said in part, "You can take the income from the building until Harry finds a position." By that statement it is clear that the gift of the income, while Harry Hebner was temporarily out of work, was a separate and distinct gift of the income for a period of time which is not shown by the record.

We are of the opinion from the competent evidence in the record that it was Mehlem's intention to make a gift or advancement of the property to the Hebners and that such decision was made prior to the execution of the agreements dated March 16, 1933, and that he adhered to that final decision all the way up to the conveyance to the Hebners on May 2, 1934, and thereafter.

Plaintiffs contend that certain facts, which they allege to be true, are circumstances tending to show a resulting

trust, among which are the following: that defendants failed to file a notice of gift with the Collector of Internal Revenue; that Mehlem was unhappily married a second time; that Mehlem's distance from the Chicago property was great; that he was not on the scene physically at the time of the execution of the contract and deed; that he was in desperate financial condition during the depression years of 1933 and 1934; that the Hebners were substantial property owners prior to the taking of title to the property in question; that McCabe made the suggestion that title to the property be placed in the Hebners; that Mehlem owned the Greenview mortgage for three years prior to default without indicating the intention of giving it to the Hebners; that all correspondence regarding the property, both before and after the transfer, was placed in Mehlem's file by attorney Cavanagh; that the Hebners displayed no interest in the property between March 16, 1933, and December, 1934; that the Hebners continuously complained about having to manage the property; and that Mehlem had put other property in the name of other persons who later conveyed to him upon request.

We see no useful purpose in discussing each contention in detail. The strongest evidence is gathered from the statements and writings of Mehlem himself, and the evidence introduced by plaintiffs fails completely to overcome the actual proof and presumption of a gift or advancement.

The record in this case consists of 4898 pages, the length of which is beyond reason. The abstract, alone, contains 1028 pages and the supplemental abstract 52 pages. Plaintiffs offered many exhibits, the last one being numbered 2969. Of such exhibits offered by plaintiffs, 425 were introduced in evidence and are a part of the record. Plaintiffs' brief and argument contains 241 pages and their reply brief 317 pages. This compares with the defendants' brief and argument which is 89 pages in length. We seriously considered refusing the briefs because of the exces-

sive length of the plaintiffs' brief and reply brief, but in view of the unnecessarily prolonged litigation, we are not disposed to cause the parties further delay and expense.

Whole series of plaintiffs' exhibits are clearly incompetent. Nothing would be accomplished by discussing each of these incompetent exhibits in detail. It is sufficient to say that, after careful consideration, the exhibits and other evidence offered fall far short of establishing a resulting trust.

Since no interest in the alleged trust estate was established in the plaintiffs as a result of this suit, the court below properly refused to direct the payment of any part of plaintiffs' attorneys fees by the defendants.

Plaintiffs complain of the amount of the master's costs. This contention was raised in the trial court and was overruled by the presiding judge. We do not deem it necessary to give further consideration to that question. The plaintiffs, by their introduction of vast quantities of incompetent exhibits and evidence, prolonged the hearing before the master and made the record excessively long. We think that ruling of the trial judge on this question was correct.

We feel that the court below was in error in assessing one third of the costs to defendants. The lengthy hearings were made necessary by plaintiffs' contentions, which were properly held to be without merit. The decree adjudicated the rights of the parties in accord with the allegations of the answer and the entire costs should have been assessed against the plaintiffs.

In view of our opinion heretofore expressed, it is not necessary to go into the question of *laches*.

The decree of the superior court is affirmed in all respects except for the apportionment of one third of the costs to defendants, and to that extent it is reversed and the cause remanded with directions to assess all costs against plaintiffs.

> *Affirmed in part, and reversed in part*
> *and remanded, with directions.*