(No. 33376.—

Leo H. Scanlon, Appellant, *vs.* Ida Scanlon, Appellee.

*Opinion filed June 16, 1955.*

C. M. GRANGER, of Kankakee, for appellant.

EVA L. MINOR, of Kankakee, for appellee.

Mr. Justice Schaefer delivered the opinion of the court:

Leo H. Scanlon brought this action in the circuit court of Kankakee County against his wife, Ida Scanlon, to establish a resulting trust in one half of an improved parcel of real estate in the city of Kankakee, and a constructive trust in the sum of $3500, which she withdrew from their joint savings account. A decree was entered finding that plaintiff had failed to prove by a preponderance of the evidence the existence of a resulting trust but that defendant should account for one half of the money withdrawn from the joint account. Plaintiff appeals from the portion of the decree relating to the real estate; defendant cross appeals from the portion awarding plaintiff a money judgment of $1750. A freehold is involved.

Plaintiff and defendant have been married since 1919. They have no children. In the early years of their marriage, plaintiff was a tenant farmer, and defendant helped with the work on the farm. His property then consisted principally of farm implements and horses. A bank obtained a judgment against plaintiff and defendant on a note, and in 1932 each was adjudicated a bankrupt. The bankruptcy proceedings were not completed and neither was ever discharged. They did, however, eventually pay all their creditors in full. Before moving to Kankakee in 1935, plaintiff realized $2200 from a farm sale. Of the proceeds of that sale, $1600 was used as the down payment on the purchase of a house in Kankakee in August of 1936. To complete the transaction, plaintiff borrowed $2000, the balance of the purchase price, from his father-in-law.

Plaintiff caused the title to the property thus purchased to be placed in defendant's name. The contract of sale, which originally showed plaintiff to be the purchaser, contains an interlineation where the name "Leo" was stricken and the name "Ida" substituted. The words "his," "him"

and "he" in the body of the contract were not changed. Early in 1937, plaintiff traded this property for his present home, which is the property involved in this litigation. This property was also conveyed to defendant alone. The mortgage loan on the property first purchased was transferred to the present residence of plaintiff and defendant, and was subsequently repaid. Both parties signed the original and the substituted notes and mortgages. The parties have not regarded the trade of the property originally purchased for the present home as affecting their respective rights.

After the exchange of properties, plaintiff at his own expense remodeled the house and converted it into two apartments. The second-floor apartment has since been rented at rentals ranging from $37.50 to $50 per month. In 1940 or 1941, with defendant's knowledge and acquiescence, plaintiff constructed on the property a large garage to house his two one-and-one-half-ton trucks and other equipment used in his trucking business. The garage cost plaintiff, according to his testimony, $2800, exclusive of his own labor; according to defendant, $800. Plaintiff has paid for all maintenance of the property and all taxes, except taxes for the year preceding this action when defendant paid the taxes. The property is unencumbered and has a current market value of $15,000.

Exactly why title to the real estate in question was taken in defendant's name is disputed. Plaintiff testified that the pendency of the bankruptcy proceedings was a factor; that his wife asked to have the property put in her name; that she was to take it "until everything was over and squared, and give it back;" that her folks told her "if she would take it like that they couldn't bother us. They forced us. * * * Her Dad; * * *." Because he was lending them $2000, the balance of the purchase price, defendant's father was at the lawyer's office when the transaction was closed. With respect to substituting

defendant's name for his name on the contract, plaintiff testified, "They [defendant and her father] thought it would be better to put it in her name. I said if we do I want a guarantee it is to be put in my name later on when this gets over with, and they both agreed they would, and that it how it happened."

Defendant testified that prior to 1932 she had received about $2000 from her family, $1000 on each of two occasions. Plaintiff denied this. Defendant testified that title to the property was taken in her name because "There was no children, and just in order to protect myself I asked my husband, and he was very willing to let me have it. * * * I remember definitely that I asked him to put it in my name and he said yes, he was willing."

After the parties moved to Kankakee, plaintiff's business ventures were successful. He first operated a gasoline service station, and later engaged in the trucking business. A substantial part of his earnings over the years was placed in a joint savings account. By the joint account agreement, plaintiff and defendant agreed that all funds deposited in the account were owned by them as joint tenants with the right of survivorship, and that "The entire account or any part thereof may be withdrawn by, or upon the order of, either of us or the survivor." At one time there was a balance of $10,000 in the account. Plaintiff placed in this account inheritances of $5726 from his mother and a brother and $1800 received as property damage to a truck. Rents were deposited in this account. Two additional parcels of real estate were bought, and sold at a profit. The parties loaned money on mortgages several times. Title to the additional real estate was taken in joint tenancy, and the mortgage loans were payable to plaintiff and defendant jointly. The profits from these transactions and from plaintiff's business were placed in the joint bank account. Both plaintiff and defendant withdrew from the account: the defendant for household expenses, and more

recently for her personal use; the plaintiff for business purposes, among them the purchase of trucks, cars and truck licenses. Defendant testified that after her father's death she received $3700, which she placed in the joint savings account. The bank records introduced in evidence did not disclose that such a deposit was made.

Until 1952 defendant took care of all plaintiff's affairs, including the collection of rents, and kept the business records. In recent years domestic discord has developed. Quarrels between plaintiff and defendant over money matters occurred with increasing frequency and intensity. In August, 1952, plaintiff suffered a severe heart attack, requiring hospitalization. When he returned home, the domestic situation deteriorated further. Plaintiff testified that defendant retained the records of his business. Defendant testified that the trouble between them started when he began examining the records. While she denied that she had refused to allow plaintiff to look at them, she testified that she thought it was wrong for him to examine the records of his own business. "After the condition he was in, he was altogether different from what he used to be. I did it for my own protection and his also." On September 30, 1952, defendant withdrew the entire balance of $3500 from their joint bank account. Despite the strained relationship, plaintiff and defendant still occupy the same house and defendant has continued to collect rents from the apartment. She paid the taxes for the last year, plaintiff apparently being unable to do so. Plaintiff testified that, after the withdrawal of the $3500 his property consisted of two old trucks and an old automobile, worth not more than $2500 in the aggregate, and $1014.23 in a separate individual savings account, and that in order to continue in business he borrowed money from a bank.

The principal question, so far as the real estate is concerned, is the sufficiency of the evidence to establish a resulting trust in one half of the real estate in favor of

plaintiff. The applicable rules of law have been frequently stated. Such a trust is created by operation of law from the presumed intention of the parties. (*Wright* v. *Wright,* 2 Ill. 2d 246; *Tuntland* v. *Haugen,* 399 Ill. 595.) In its most common application, a resulting trust arises from the fact that the consideration for the purchase of land is furnished by one person while the title is taken in the name of another. (*Tuntland* v. *Haugen,* 399 Ill. 595; *Houdek* v. *Ehrenberger,* 397 Ill. 62; *Link* v. *Emrich,* 346 Ill. 238.) "Where a transfer of property is made to one person, and another person at the time of the transfer undertakes an obligation to pay the purchase price, a resulting trust arises in favor of the latter person, unless he manifests an intention that no resulting trust arise." (2 Restatement of the Law of Trusts, sec. 456.) The burden of proof is upon the party seeking to establish a resulting trust, and the evidence, to be effective for this purpose, must be clear, convincing and unmistakable. *Wright* v. *Wright,* 2 Ill. 2d 246; *Paluszek* v. *Wohlrab,* 1 Ill. 2d 363; *Dean* v. *Dean,* 401 Ill. 406; *McCabe* v. *Hebner,* 410 Ill. 557; *Cook* v. *Blazis,* 365 Ill. 625.

Here the evidence establishes that the initial payment of $1600 was made out of the proceeds of the sale of plaintiff's farm equipment. He obligated himself to pay the mortgage which secured the balance, which was satisfied from his business earnings and from the rent of the apartment. Although the down payment on the purchase price came from the proceeds of the farm sale in 1935, plaintiff testified that he regarded it as belonging to both his wife and himself. His testimony in this regard is in accord with the allegations of his complaint that it was his intention and understanding to share equally with her everything acquired during the marriage. Apart from the possibility of a presumption of gift from husband to wife, the evidence conclusively establishes a resulting trust.

Where a husband purchases real estate and takes title in his wife's name, there is a presumption of gift or advancement. (*Baker* v. *Baker*, 412 Ill. 511; *McCabe* v. *Hebner*, 410 Ill. 557; *Hartley* v. *Hartley*, 279 Ill. 593; *cf.* 2 Restatement of the Law of Trusts, sec. 442.) This presumption of fact, (2A Bogert on Trusts and Trustees, sec. 459, p. 481; *John* v. *John*, 322 Ill. 236,) however, is not conclusive. The intention of the parties governs. (*Hartley* v. *Hartley*, 279 Ill. 593, 602.) "The question is really one of intention as shown by all the circumstances." (3 Scott on Trusts and Trustees, sec. 454.2.) If the proof discloses that it was not the intention of the parties that the conveyance was to be deemed a gift or advancement, equity will effectuate the intention of the parties by declaring a resulting trust. *O'Donnell* v. *O'Donnell*, 303 Ill. 31; *John* v. *John*, 322 Ill. 236; *Bachseits* v. *Leichtweis*, 256 Ill. 357.

Among the circumstances which tend to rebut the presumption of a gift or advancement, or to show that the presumption is unreasonable, is the fact that the property conveyed consists of the husband's entire estate. (*Pool* v. *Phillips*, 167 Ill. 432, 442; *Skahen* v. *Irving*, 206 Ill. 597, 607; *Bachseits* v. *Leichtweis*, 256 Ill. 357, 362; *Dodge* v. *Thomas*, 266 Ill. 76, 85.) In *Pool* v. *Phillips*, 167 Ill. 432, 442, this court observed: "It has been uniformly held, whenever the question has arisen, that the gift of a husband's or father's entire estate to a wife or child by way of advancement is unreasonable." Other factors tending to overcome the presumption of a gift where the husband has paid the purchase price, are the making of improvements, payment of taxes and the mortgage debt, occupancy of the premises as a home and a place of business, and the exercise of control and management of the property. *Cook* v. *Blazis*, 365 Ill. 625, 629; *Bachseits* v. *Leichtweis*, 256 Ill. 357; *Dorman* v. *Dorman*, 187 Ill. 154.

Here the payment of $1600 on the purchase price of the house in 1936 for all practical purposes stripped the plaintiff of everything he had. Upon acquisition of the property plaintiff took immediate possession, occupied it as his home, remodeled it at his own expense, paid for improvements, maintenance, and all taxes, with the single exception of one year when he was unable to do so, apparently because defendant had withdrawn all the funds on deposit in their joint savings account. He erected a large garage on the premises from which he carried on his trucking business, and exercised dominion generally over the property. His right to do so appears to have been recognized by his wife. It is true, of course, as defendant says, that these circumstances are not inevitably inconsistent with the presumption that he intended the conveyance to her as a gift or advancement. (*Houdek* v. *Ehrenberger*, 397 Ill. 62; *Nickoloff* v. *Nickoloff*, 384 Ill. 377.) But it is equally true that they are of considerable significance in arriving at his intention at the time of the conveyance particularly where, as here, the property constituted his entire estate. *John* v. *John*, 322 Ill. 236; *Hartley* v. *Hartley*, 279 Ill. 593; *Bachseits* v. *Leichtweis*, 256 Ill. 357; *Skahen* v. *Irving*, 206 Ill. 597; *Pool* v. *Phillips*, 167 Ill. 432; *Adlard* v. *Adlard*, 65 Ill. 212; *Taylor* v. *Taylor*, 4 Gilm. 303.

The circumstances of the parties at the time of the conveyances argue strongly against the possibility of a gift. Defendant's testimony that she asked plaintiff "to put the property in my name" bears out the plaintiff's suggestion that the form of conveyance was related to the pending bankruptcy; it is hardly the normal language of gift between husband and wife. What happened throughout the subsequent prosperous years is entirely consistent with plaintiff's contention that it was understood that he and defendant would share equally all property acquired during their marriage. The transaction here involved appears to

be the only significant deviation from the pattern of joint ownership which lasted until the parties fell apart in recent years.

We are of the opinion the evidence overcomes any presumption of gift attaching to the conveyance before us. The intention of the parties is controlling, and that intention undoubtedly was that plaintiff and defendant were to be joint owners of the property in question.

Defendant insists that in any event plaintiff is barred by *laches*. *John* v. *John*, 322 Ill. 236, 249, disposes of this contention: "There was no adverse possession in the wife and their occupation of the premises was joint. The intimate relations between husband and wife and his confidence in her and the reasons for the trust are all properly to be considered in determining whether the defense of *laches* should be allowed to prevail. (*Wright* v. *Wright*, 242 Ill. 71.)" See also, *Remus* v. *Schwass*, 406 Ill. 63, 71. Here the plaintiff has been in possession of the property at all times, and defendant has shown no change of position or prejudice resulting from such delay as there may have been in commencing this action. *Laches* is not a bar to the plaintiff's claim for equitable relief.

So far as the joint bank account is concerned, the decree found that the $3500 withdrawn by defendant from the joint savings account was the accumulation of the efforts of both plaintiff and defendant, and that in equity each was entitled to one half. We are of the opinion that the decree reached a correct result in this respect. The conduct of the parties over the many years until discord recently developed supports the testimony of the plaintiff that it was the understanding of the parties that property acquired during the marriage was to be shared equally by them. As we held in No. 33346, *In re Estate of Schneider*, decided this day, the form of the joint deposit agreement, while sufficient in the absence of contrary evidence to

234

establish a donative intent, was not conclusive. See *Gercke v. Gercke,* 331 Ill. 413; *Swofford v. Swofford,* 327 Ill. App. 55; Annotation, 161 A.L.R. 71.

The decree of the circuit court of Kankakee County, to the extent it awarded plaintiff a money judgment, is affirmed; to the extent that it denied plaintiff other and further relief, the decree is reversed and the cause remanded, with directions to proceed in accordance with the views expressed in this opinion.

*Affirmed in part and reversed in part and remanded, with directions.*