*In re* ESTATE OF DAVE FLEMING McCORMICK, Deceased (John F. McCormick, Adm'r, Plaintiff-Appellee, v. Charles D. McCormick *et al.*, Defendants-Appellants).

Second District   No. 2—93—0141

Opinion filed May 12, 1994.

Francis M. Martinez, of Seventh Street Law Offices, of Rockford, for appellants.

Louis C. Bowman, of Greene, Bowman, Flaherty & McCarty, of Rockford, for appellee.

JUSTICE COLWELL delivered the opinion of the court:

Defendants, Charles D. and Audrey E. McCormick, appeal an order of the circuit court impressing a resulting trust on the property of the decedent, Dave Fleming McCormick, in favor of the estate. We affirm in part, reverse in part, and remand the cause for further proceedings.

On December 8, 1989, John F. McCormick (John), the administrator of the estate of the deceased (Dave), filed a petition to probate decedent's will and to have letters testamentary issued. According to the petition, Dave McCormick died on October 2, 1986, leaving a will dated October 12, 1957, and believed to be the last will of the decedent. John and his brother Charles McCormick are the sons and heirs of the decedent. Audrey is the wife of Charles.

On June 21, 1990, John petitioned the circuit court to impress a resulting trust on the property of the deceased in favor of the estate and to turn over assets of the estate to the administrator. The petition alleged, *inter alia*, that, on August 26, 1971, Dave and his wife Marie (also later deceased) had transferred legal title of their marital home, located at 214 East Chapel Street, in Rockton, Illinois, to Charles and his wife Audrey, without consideration and for the sole purpose of allowing Charles to use the home to secure a business loan. The petition alleged that the grantors, Dave and Marie, continued to enjoy the exclusive use and occupancy of the home until their deaths and that, thereafter, Charles and Audrey failed to return the legal title to the grantors after the purpose of the transfer was accomplished.

The petition concluded that Charles and Audrey held legal title to decedent's property under a resulting trust for the use and benefit of the decedent and that they had failed to render this asset to the administrator of the estate. The petition also sought the return of approximately $6,780 in cash deposits of the decedent alleged to be held by Charles and sought an accounting of the household furnishings and other personal property of the decedent. After an evidentiary hearing, the trial court entered an order finding that Charles and Audrey jointly and severally held legal title and possession of the home, the personal property, and approximately $6,780 in cash accounts; the court ordered an accounting to the administrator for these assets, which were deemed held in trust, and ordered them to deliver all legal and equitable title and physical possession to the administrator.

On appeal, defendants, Charles and Audrey, contend that the trial court erred in impressing a resulting trust on the decedent's home, which was transferred to them by deed in 1971. They argue

that (1) this specific property was adeemed in the will because the conveyance operated to revoke the devise in the will and this real property no longer existed as part of the estate; and (2) that the administrator has failed to meet his high burden of proof to show by clear, convincing, and unmistakable evidence that a resulting trust came into existence at the time the home was conveyed; defendants assert that the deed raised a presumption that the transfer of the home was a gift and this presumption was not rebutted by the evidence.

At the hearing on June 18, 1991, Anna B. Hopkins testified that she had lived at 210 East Chapel Street in Rockton since 1940. Dave and Marie purchased their home in 1946 from Hopkins, who lived next door. Dave and Marie still owed some money on the property in August 1971 and came to Hopkins to pay off the balance owed on the home. Over defendants' hearsay objection, Hopkins testified that Marie told her they were paying off the property because Charles wanted to go into business and wanted his parents to deed the property to him so he could borrow money for that purpose. Subsequently, Dave and Marie continued to live on the property until their deaths and continued to refer to the property as their own during that time. Charles never resided there until after the deaths of his parents. Hopkins believed that Dave and Marie owed several thousand dollars—perhaps $7,000—on the property in 1971.

Charles McCormick testified that he was the son of Dave and Marie and that his parents lived in the home adjacent to Mrs. Hopkins until their deaths. He acknowledged that his parents bought the home from Hopkins. Charles testified regarding the deed by which he acquired the title to the property from Dave and Marie on August 26, 1971; the deed was recorded on September 2, 1971. At that time, Charles was attempting to purchase and finance a grocery store business in Land O Lakes, Wisconsin, and needed to borrow money for this purpose. Although he owned a home in Land O Lakes, he needed additional security to obtain a loan.

The day after the transfer of title, Charles used the home to obtain his loan by mortgaging it with First Federal Savings and Loan in the amount of $20,000. When asked if there was any consideration paid for the transfer of the deed, Charles said he paid $1 in cash and did not have a receipt or a cancelled check. He did not know why there were no tax stamps on the document to indicate the purchase price. Charles admitted that his parents lived in the home until their deaths without paying rent and that he never occupied the home during that time.

Charles stated that he maintained the home by taking care of

"anything major," but he had no receipts or cancelled checks for the repairs. He took possession of the home following the deaths of Dave and Marie. Marie predeceased Dave. When he took possession, there were furnishings in the home, and he assumed that they went with the house. The wills of Dave and Marie, both dated December 12, 1957, were admitted into evidence without objection. Each will purported to leave the entire estate of the surviving spouse to be divided equally between Charles and John.

Charles further testified that, at the time of his father's death, there were two cash accounts that bore his and his father's names. One savings account at the F.M. Credit Union had a balance of $5,780.16. The other account was at the First National Bank in Beloit which contained $1,003 according to the estimate of plaintiff's counsel, but Charles could not verify that amount. Charles stated that, after his father's death, he paid some bills with the cash and divided the balance with his brother John. At this point in the proceeding, Charles agreed to make an accounting to the court within 14 days and to allow the administrator to make an inventory of the contents of the house. When Charles was asked if the reason for the transfer of the realty in August 1971 was to allow him to secure financing for his business, he replied, "Yes. It was a business transaction." Charles further testified that there was a small balance remaining on the loan of probably less than $5,000 and there was still a lien on the property.

John McCormick testified that he resided in Rockford, Illinois, and was the son of Dave and Marie. He called his parents five or six times per week and visited them frequently. Over defendants' hearsay objection, he testified that his mother and father informed him that they were helping his brother get into business by giving him the deed to the home to obtain a loan for the business. From that point on, the parents never stated whose home it was and never vacated the home in favor of Charles and his family. Dave and Marie never paid rent and continued to maintain the home. John had the house painted, but he was not aware that Charles ever made any repairs to the home. They never mentioned a gift to Charles, nor was there any discussion by them that Charles would deed the property back to them. Regarding the two cash accounts, John stated that Charles' name was placed on the accounts because his mother's handwriting was becoming poor and his parents wanted someone else to assist in their banking activities.

On cross-examination, John denied that his parents deeded the home to Charles in order to keep it out of his hands. When the house was conveyed in 1971, John was in Colorado during a seven-year pe-

riod. He was also in the military service. John acknowledged that he had received $1,614.75 from Charles. He denied any knowledge of an agreement between Charles, Audrey, and his parents to deed the house back to his parents. He stated that his parents intended to convey an interest in the property to him through their wills and that his parents had told him several times of this intent.

Charles was recalled to testify that there was no agreement between himself, Audrey, and his parents to hold any interest in the home for a future transfer of such interest for the benefit of John. Charles stated that the cash balances in the F.M. Credit Union and the First National Bank in Beloit amounted to $5,780.16 and $1,003.45 respectively.

■ On appeal, defendants first argue that the testamentary gift of property fails or is adeemed where the specific devise no longer exists at the time of the testator's death because the disposition of the property during the testator's lifetime operates as a revocation of the devise. (See, e.g., *In re Estate of Krotzsch* (1975), 60 Ill. 2d 342, 346-47; *Brady v. Paine* (1945), 391 Ill. 596.) However, as plaintiff points out, the trial court here was not called upon to construe the specific devise of a will concerning the property. There were apparently no witnesses available to testify regarding the execution of the wills. Rather, in support of plaintiff's petition to declare a resulting trust, the wills were admitted only for evidentiary purposes to show the alleged intent of Dave and Marie that Charles and John should share equally in their estate. We find the law of ademption inapplicable under the circumstances.

Defendants next argue that plaintiff did not meet his heavy burden of proof to show that a resulting trust came into existence when the real estate was conveyed to Charles and Audrey. We agree that plaintiff failed in his burden of proof on this issue, and we reverse the finding of a resulting trust as to the real estate only. The judgment will be affirmed in all other respects. We limit our holding to that issue because defendants have argued only the failure of the proof with respect to the resulting trust imposed on the realty. Likewise, defendants have made no specific arguments concerning the evidence supporting the court's disposition of the personalty and have focused instead on the disposition of the realty. We will not therefore disturb the court's decision as to the disposition of the personalty.

■ A resulting trust arises by operation of law where one person furnishes the consideration for the purchase of property while the conveyance is taken in the name of another. (*McCabe v. Hebner* (1951), 410 Ill. 557, 562; *Gary-Wheaton Bank v. Meyer* (1984), 130 Ill.

App. 3d 87, 91.) Whether such a trust arises depends upon the intention of the person who furnishes the purchase price at the time of the conveyance, and the resulting trust arises at the instant the legal title is taken (*In re Estate of Wilson* (1980), 81 Ill. 2d 349, 355-56), or it does not arise at all; if the trust does not arise then, it will not be created by the payor's change of mind at a later date (*Hocking v. Hocking* (1979), 76 Ill. App. 3d 29; *Meyer*, 130 Ill. App. 3d at 91).

The theory of a resulting trust is founded upon a natural equity that one who pays for the property should enjoy it, unless he intended by the vesting of title to confer a beneficial interest upon the grantee. (*Treschak v. Yorkville National Bank* (1992), 237 Ill. App. 3d 855, 857.) No general rule can be stated that will determine when a conveyance made to one other than the person furnishing the consideration will carry with it a beneficial interest and when it will be construed to create a trust, but the intention must be gathered from the facts and circumstances shown by the record in each case. (*Prassa v. Corcoran* (1962), 24 Ill. 2d 288, 292.) While the payment of consideration may raise a *prima facie* presumption of a resulting trust (*Zack Co. v. Sims* (1982), 108 Ill. App. 3d 16, 27), this presumption may be rebutted when the evidentiary facts and circumstances show that the payor intended to confer the beneficial interest in the property upon the grantee and not merely the legal title (*Cadena v. Cadena* (1983), 116 Ill. App. 3d 153, 155; *Zack*, 108 Ill. App. 3d at 27). The intention of the payor is controlling. *Zack*, 108 Ill. App. 3d at 26.

In this type of case, although factual determinations are best left to the trier of fact, such determinations may be overturned when they are against the manifest weight of the evidence or where there is clear and palpable error in some other respect. (See *Zack*, 108 Ill. App. 3d at 27; *Hocking v. Hocking* (1979), 76 Ill. App. 3d 29, 35.) The burden of proof is on the party seeking to establish the resulting trust, and the evidence must be clear, convincing, unequivocal, and unmistakable. (*Wilson*, 81 Ill. 2d at 356; *Cadena*, 116 Ill. App. 3d at 155.) A resulting trust will not be sustained where the transaction can be construed in any other reasonable fashion. For example, when property is transferred from one family member to another, a presumption arises in favor of a gift which will negate a resulting trust. (*Meyer*, 130 Ill. App. 3d at 91, citing *Moore v. Moore* (1956), 9 Ill. 2d 556, 557.) Where a son or daughter is the transferee, the presumption of a gift arises because the transferee is the natural object of the bounty of the person paying the purchase price. (See *Moore*, 9 Ill. 2d at 558.) Moreover, evidence that the parent grantor pays the maintenance costs of the property and occupies or exercises dominion over the property after the transfer of title has been held

in several cases not to negate the presumption of a gift or an advancement to a child grantee. (See, *e.g.*, *Moore*, 9 Ill. 2d at 558; *McCabe*, 410 Ill. at 564; *Kohlhaas v. Smith* (1951), 408 Ill. 535, 542.) Thus, where the presumption of a gift arises, it then devolves upon the one questioning the gift to overcome that presumption by clear, convincing, unequivocal and unmistakable evidence. *Wilson*, 81 Ill. 2d at 357.

■ In the case at bar, John has not met the heavy burden of establishing the existence of a resulting trust for the benefit of the estate or, alternatively, of rebutting the presumption of a gift to Charles. While the evidence establishes that Dave and Marie transferred legal ownership of their home to Charles and Audrey so they could use the home as security for a business loan, this does not negate the existence of a gift to Charles (and his wife, for that matter). Dave and Marie could have made a gift with this very purpose in mind. John testified that his parents never mentioned a gift to Charles nor was he aware of any discussion or agreement by them that Charles would deed the property back to them. This lack of evidence does little or nothing to prove the existence of the resulting trust. Although John stated that his parents told him they intended to convey an interest in the property to him by means of their wills written in 1957, this intent appears to be negated by their conduct in 1971 and thereafter. Even if the wills were still considered valid, they would have virtually no probative value of the parents' intent to dispose of their property as they saw fit in 1971. See, *e.g.*, *Kohlhaas*, 408 Ill. at 541-42.

Most importantly, there is no competent evidence in the record that the grantors or the grantees expressed any intent that Charles and Audrey were to hold the property for the benefit of Dave and Marie or were to reconvey the property at any time. Charles testified that there was no such intent. John himself testified that, after his parents told him they were helping his brother get started in business, they never stated whose home it was, although they never vacated the home in favor of Charles and his family. That Dave and Marie continued to enjoy the use of the property is not conclusive of their intent to establish a resulting trust and does not negate their intent to give the property to the grantees where at least one of them was their child. (See, *e.g.*, *Moore*, 9 Ill. 2d at 558; *McCabe*, 410 Ill. at 564; *Kohlhaas*, 408 Ill. at 541-42.) Indeed, we believe that permitting Charles and his wife to encumber the property by securing a business loan is further evidence that Dave and Marie were also transferring their beneficial interest in the property to the grantees for their use. See *Wachta v. First Federal Savings & Loan Association*

(1981), 103 Ill. App. 3d 174, 176-77 (owner of beneficial interest has power to transfer all or any incidents of beneficial ownership by general assignment); see also *Borden v. Croak* (1889), 131 Ill. 68, 75 (mortgage creates equitable interest and in equity may operate to transfer beneficial interest to the mortgagee).

While a resulting trust could conceivably be inferred from the evidence of the parents' conduct in continuing to use and occupy the property as their own, under the circumstances present here, this evidence alone falls far short of the clear, convincing, unequivocal and unmistakable evidence needed to show that the grantors intended a resulting trust. Alternatively, a gift can reasonably be inferred at least with respect to Charles, and there is no evidence tending to negate a gift to his wife Audrey where the conveyance was in joint tenancy with Charles. (*Cf. Varap v. Varap* (1966), 76 Ill. App. 2d 402, 413 (no presumption of gift to daughter-in-law and evidence of gift was insufficient).) Where a transaction is susceptive of any other reasonable interpretation, no resulting trust will be found. *Zack Co. v. Sims*, 108 Ill. App. 3d at 27.

Finally, we observe that our supreme court has disapproved of applying the resulting trust doctrine where a parent who has owned the property for many years transfers title to another (his child) apparently because there is no purchase money advanced contemporaneously with the transfer of title. *Kraft v. Kretchman* (1959), 17 Ill. 2d 71, 76, explaining *Kohlhaas v. Smith*, 408 Ill. 535.

We conclude that plaintiff did not meet his burden of proof, and we reverse that part of the trial court's order impressing a resulting trust upon the realty as the court's finding was against the manifest weight of the evidence. The realty must be deemed to be the property of Charles and Audrey. The judgment of the circuit court is affirmed in all other respects, and the cause is remanded for further proceedings consistent with the views expressed herein.

Affirmed in part; reversed in part and remanded.

QUETSCH and PECCARELLI, JJ., concur.