*In re* ESTATE OF SARA E. KOCH, Deceased (Verne M. Koch, Petitioner-Appellant, v. Cynthia K. Hadsell *et al.*, Co-Ex'rs, Respondents-Appellees).

Third District No. 4—97—0990

Opinion filed July 13, 1998.

Angela P. Madison, of Corrigan & Dura, P.C., of Peoria, for appellant.

Michael A. Hall and Kathleen E. Weeks, both of Johnson, Bunce & Noble, P.C., of Peoria, for appellees.

JUSTICE BRESLIN delivered the opinion of the court:

When Sara Koch (Sally) died, she held title to some property in Florida. Her husband, Verne, filed a claim with the estate, asserting that the property was subject to a resulting trust in his favor. Sally's children, Cynthia and Jon, acting as co-executors of Sally's estate, refused to accept Verne's claim. The trial court determined that no resulting trust existed. We find that Verne overcame the presumption that the purchase of the property constituted a gift to Sally and proved by clear and convincing evidence that a resulting trust arose in his favor. Therefore, we reverse and remand.

Verne and Sally were married in 1964. At that time, Cynthia, Sally's daughter through her previous marriage, was 12 years old. Verne adopted Cynthia, but he did not think she ever accepted him as her father. Later, apparently, Jon was born to Verne and Sally.

Verne became a shareholder in Frank Heinz Construction Company, Inc., a general contractor, in 1974. Another of the shareholders was Raymond Keesecker. Raymond's wife, Barbara, and Sally had been good friends before Verne and Raymond became business associates. The couples remained quite close over the years.

In 1975, Raymond and Verne discussed purchasing some real estate in Florida upon which they could build a vacation home for their families. Verne flew to Florida, examined the site, and made a deposit on the purchase of a lot (Lot 142) for $17,500. The purchase agreement drafted thereafter contained the names of Verne and Sally Koch and Raymond and Barbara Keesecker.

During the process of purchasing the property, authorities in Florida passed a moratorium on building which covered Lot 142. Raymond became frustrated because of the expected delay in building a vacation home on Lot 142. He decided that he did not want to invest in the Florida property. Consequently, when the purchase agreement needed to be signed, Verne used a typewriter to "x" Raymond's name off the agreement. Then, thinking it would look strange for him to own property with his wife and another man's wife, Verne also "x'd" his name off the agreement. As a result, the deed to the property was issued in the names of Sally Koch and Barbara Keesecker only. Barbara later quit-claimed her interest in the property to Sally.

The purchase price on Lot 142 was paid by check from Frank Heinz Construction Company. Thereafter, Verne repaid the company through payroll deduction. The Keeseckers did not supply any of the consideration for the purchase of the land. Verne was in charge of all dealings related to Lot 142. He spoke with the contractors, lawyers and real estate people. He paid the taxes on the land.

During this period of time, Verne and Sally executed wills giving

all of their property to each other, should the other survive. Sally later executed another will dividing her estate evenly among Verne, Cynthia and Jon, but Verne did not know of this will until after Sally died. When Verne learned of Sally's second will, he offered to give Cynthia and Jon trucks and cash in exchange for Lot 142. Cynthia refused and demanded that she be paid for her "share" in the land.

Before the trial court, Verne argued that he had always intended that Lot 142 be his and Sally's. He believed that all of Sally's property would be his when Sally died, so he did not think he needed to worry about the fact that Sally held title to the land in her name only. Cynthia and Jon argued that, according to black letter law on resulting trusts, no trust could have arisen because: (1) Verne did not purchase the land with money that was solely his; and (2) Verne intended Sally to have a beneficial interest in the land at the time it was purchased. The trial court agreed with Cynthia and Jon and held that no resulting trust had been established.

The sole issue on appeal is whether Verne presented clear and convincing evidence that a resulting trust in his favor should be imposed on Lot 142.

■ A resulting trust is an "intent enforcing" trust; it arises by operation of law and the presumed intent of the parties. *In re Estate of Wilson*, 81 Ill. 2d 349, 410 N.E.2d 23 (1980). Generally, a resulting trust arises when one person pays the consideration for property which is taken in the name of another. *Gary-Wheaton Bank v. Meyer*, 130 Ill. App. 3d 87, 473 N.E.2d 548 (1984). The resulting trust is based upon the "natural equity" that the one who pays for the property should enjoy it. *Prassa v. Corcoran*, 24 Ill. 2d 288, 181 N.E.2d 138 (1962). A resulting trust arises at the time of the conveyance, and the payor's intention at that time determines whether a resulting trust may be found. *In re Estate of McCormick*, 262 Ill. App. 3d 163, 634 N.E.2d 341 (1994). The party seeking to establish the existence of a resulting trust bears the burden of proving it by clear and convincing evidence. *Zack Co. v. Sims*, 108 Ill. App. 3d 16, 438 N.E.2d 663 (1982).

■ As a general rule, if a husband purchases property and the title to the property is placed in the name of his wife, the law presumes that the husband intended to make a gift to his wife and no resulting trust arises. *Wright v. Wright*, 242 Ill. 71, 89 N.E. 789 (1909).[1] The presumption of a gift from the husband to the wife may be overcome

[1]Illinois law also provides that when a wife furnishes the consideration for the purchase of property which is titled in the name of her husband, a resulting trust in her favor is presumed. See *Wright*, 242 Ill. 71, 89 N.E. 789. This disparity of remedies as between the husband and the wife is of very dubious

by evidence showing, *inter alia*: (1) the property constituted all or substantially all of the husband's estate; (2) the husband made improvements to the property; (3) the husband paid the taxes and/or the mortgage debt on the property; (4) the husband occupied the property as his home or place of business; and (5) the husband exercised control over or managed the property. *Scanlon v. Scanlon*, 6 Ill. 2d 224, 127 N.E.2d 435 (1955).

■ In the instant case, Verne presented evidence showing that he alone transacted all of the business that involved Lot 142. He arranged for the purchase of the lot. He paid the purchase price. He paid the taxes. He dealt with the authorities in Florida with regard to building permits. Although he did not live on the property and the property did not constitute all or substantially all of his property, he managed the property and exerted exclusive control over the property. In short, Sally was the owner of Lot 142 in name only. Consequently, we hold that Verne proved by clear and convincing evidence that at the time Lot 142 was purchased he did not intend to make a gift to Sally but rather intended a resulting trust in his favor. The circuit court's decision to the contrary cannot stand.

The judgment of the circuit court of Peoria County is reversed and the matter remanded with instructions to place title to Lot 142 in Verne's name.

Reversed and remanded.

HOLDRIDGE and LYTTON, JJ., concur.

---

validity. See *Peek v. Peek*, 131 Ill. App. 2d 1045, 268 N.E.2d 443 (1971). The Supreme Court of North Carolina rejected this scheme of disparate presumptions in a well-reasoned opinion in *Mims v. Mims*, 305 N.C. 41, 286 S.E.2d 779 (1982). At the time *Mims* was decided Connecticut, Georgia, Massachusetts, Montana, Nebraska and Washington had abandoned gender-differentiated presumptions. Since *Mims*, Arizona, Arkansas, Florida and New Jersey have also abandoned these rules. See *Toth v. Toth*, 190 Ariz. 218, 946 P.2d 900 (1997); *Warren v. Warren*, 11 Ark. App. 58, 665 S.W.2d 909 (1984); *Maliski v. Maliski*, 664 So. 2d 341 (Fla. Dist. Ct. App. 1995); *Shayegan v. Baldwin*, 237 N.J. Super. 47, 566 A.2d 1164 (1989). In fact, the New Jersey court noted that such distinctions may run afoul of the equal protection clause of the United States Constitution as outlined in *Orr v. Orr*, 440 U.S. 268, 59 L. Ed. 2d 306, 99 S. Ct. 1102 (1979). However, the case at bar does not present the appropriate facts for ruling on the continued validity of these disparate presumptions in Illinois. But the rationale of *Mims* convinces us that the presumption of a gift between spouses is the appropriate analysis to apply regardless of the gender of the parties. Therefore, we utilize that analysis in the case at bar.