Darrel **DUNHAM**, Trustee–Appellant,

v.

Fredric J. **KISAK**, et al., Defendants–Appellees.

No. 99–1106.

United States Court of Appeals, Seventh Circuit.

Argued May 21, 1999.

Decided Oct. 4, 1999.

P. Michael Kimmel, Gilbert, Kimmel, Huffman & Prosser, Carbondale, IL, Darrell Dunham (argued), Murphysboro, IL, for Trustee–Appellant.

Terry Sharp (argued), Mt. Vernon, IL, for Defendants–Appellees.

Before FLAUM, KANNE, and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Embroiled in litigation, Fredric Kisak ("Fred") executed a quitclaim deed in October 1995 to have his name removed from the title to his parents' home. Ten months later, he declared bankruptcy. The trustee filed an adversary complaint asserting that in executing the quitclaim deed, Fred had fraudulently transferred an interest in

property. *See* 11 U.S.C. § 548(a)(1) (1999); *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 535, 114 S.Ct. 1757, 1760, 128 L.Ed.2d 556 (1994). After conducting a trial, the bankruptcy court denied relief to the trustee, finding, among other things, that prior to the transfer Fred either held "bare legal title" to the property—an interest that "has no value whatsoever"—or that he held an interest solely in constructive trust for his parents. *Dunham v. Kisak*, Adversary No. 97–4027, Opinion at 5–8 (Bankr.S.D.Ill. Feb. 27, 1998) ("Bankruptcy Op."). The district court affirmed on a different ground, reasoning that Fred had an interest in the property as a resulting, rather than a constructive, trustee for his parents. *Dunham v. Kisak*, No. 98 C 338, Memorandum & Order at 10–16 (S.D.Ill. Dec. 16, 1998) ("District Mem. & Order"). The trustee again appeals, arguing that the record lacks the clear and convincing evidence necessary to establish a resulting trust under Illinois law. *See, e.g., In re Estate of Wilson*, 81 Ill.2d 349, 43 Ill.Dec. 23, 410 N.E.2d 23, 27 (Ill.1980). We affirm.

## I.

In 1980, Fred formed a real estate development partnership, Jerred Homecrafters, with Jerry Lynn Schuttek. Two years later, with a $15,000 loan from Fred's parents, John and Ann Kisak, Jerred acquired ten lots in Carterville, a small Illinois metropolis located between the more familiar Southern Illinois cities of Carbondale and Marion.

In 1988, Jerred constructed a home for Fred's parents on three of the Carterville lots, which from here on we shall simply refer to as "the property." John and Ann paid approximately $72,000 for the materials and labor used in constructing the home. On June 9, 1988, Fred and Schuttek in their individual capacities executed a quitclaim deed conveying their entire interest in the property to John, Ann, Fred, and Fred's wife, Joyce Kisak, as joint tenants. Since that time, John and Ann alone have lived on and possessed the property. They have paid all of the real estate taxes, and they have also insured the property in their names only and at their expense.

On October 26, 1995, Fred, along with John, Ann, and Joyce, executed a quitclaim deed conveying their interest in the property to John and Ann as tenants by the entirety and to Joyce as a joint tenant. Fred, Schuttek, and Jerred (which the former partners had dissolved two years earlier) had been countersued in litigation they had initiated, and Joyce, who worked as a paralegal at a Carbondale law firm, was worried that her in-laws' home might be implicated if her husband lost the countersuit. When Joyce expressed her concern to Mary Lou Rouhandeh, an attorney at the firm, Rouhandeh encouraged Joyce to have Fred's name removed from the title. The Kisaks agreed, and Rouhandeh prepared the 1995 deed accomplishing that end. Rouhandeh would later testify that Joyce told her that she and Fred had been placed on the title in 1988 as a means of avoiding probate. Fred and Schuttek subsequently lost the litigation.

After Fred sought relief under Chapter 7 of the Bankruptcy Code in September 1996, the trustee of his bankruptcy estate decided that the 1995 attempt to surrender his interest in his parents' property was invalid under section 548 of the Bankruptcy Code. The trustee thus filed an adversary complaint against the Kisaks asking the bankruptcy court to invalidate the transfer. In relevant part, the statute provides:

(a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any

entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(B) (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

    (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

      . . .

11 U.S.C. § 548 (1999).[1] The trustee sought relief under both of the alternative theories reflected in subsections (a)(1)(A) and (B). That is, he argued that Fred transferred an interest in his parents' property with an actual intent to hinder, delay, or defraud his creditors and that he received less than a reasonably equivalent value in exchange for that interest at a time when he was insolvent.[2]

Judge Lessen of the Bankruptcy Court ruled in favor of the Kisaks. He found that Fred did not execute the 1995 quit-claim deed with an intent to hinder, delay, or defraud a creditor. Bankruptcy Op. at 6.

While it is acknowledged that Fred, Jerry [Schuttek] and Jerred had been named as defendants in a civil lawsuit prior to the transfer, there was no subjective expectation on Fred's part at the time that he would not prevail in the lawsuit. Further, the testimony at trial, which the Court finds credible, indicated that Fred did not believe that he had any ownership interest in the subject property at the time—he believed he had conveyed away his ownership interest with the 1988 deed. . . .

*Id.* The judge also rejected the notion that in executing the 1995 deed, Fred had transferred any property interest for which the statute demanded adequate compensation. As Judge Lessen viewed the evidence, Fred held only bare legal title to the property pursuant to the 1988 deed. *Id.* at 5.[3] Pragmatically speaking, then, when Fred executed the 1995 deed, he did not actually transfer any "interest of the debtor in property." Bankruptcy Op. at 5–6; *see* § 548(a)(1). Moreover, to the extent he did transfer a cognizable interest in property, it was one of "no value whatsoever." *Id.* at 6. Commensurately, the trustee, in his effort to set aside the 1995 transfer, stood to gain on behalf of the estate only the legal title that Fred

---

1. The statute was amended in 1998, resulting in the re-numbering of certain of the provisions relevant here. *See* 11 U.S.C. § 548 (1999), Note, 1998 Amendments.

2. Schuttek declared bankruptcy at the same time that Fred did. In addition to the attack on the 1995 deed, the trustee also challenged the 1988 deed pursuant to which Fred and Schuttek had transferred their individual interests in the property to John, Ann, Fred, and Joyce. The trustee asserted that because the two partners had executed the 1988 deed individually rather than as partners on behalf of Jerred (which actually held title to the property), the conveyance was ineffective as against a hypothetical bona fide purchaser. By virtue of the "strong arm" provision set forth in 11 U.S.C. § 544(a)(3), the trustee thus claimed an interest in the property superior to the grantees of the 1988 deed (John, Ann, Fred, and Joyce). The bankruptcy court re-

jected this claim, Bankruptcy Op. at 8–11, and the district court affirmed in this regard, District Mem. & Order at 16–18. The trustee does not appeal the disposition of this claim. Trustee Br. 6–7.

3. The court observed:

The 1988 deed listed Fred and Joyce as *joint owners only* for estate planning purposes as they were the natural and logical heirs of John and Ann. Neither Fred nor Joyce thought they had any ownership interest in the property. Neither Fred nor Joyce ever lived in the property, ever paid real estate, insurance or utility bills related to the property, or ever acted in a way which would have indicated that they had or thought they had a present or future ownership interest or any type of dominion or control over the property.

Bankruptcy Op. at 5.

had conveyed, with no corresponding equitable interest in the property. *Id.* at 7, 8; *see* 11 U.S.C. § 541(d); *In re Marrs–Winn Co.*, 103 F.3d 584, 589 (7th Cir.1996).[4] Alternatively, Judge Lessen noted that property held in trust for another does not amount to property of the estate. Bankruptcy Op. at 7–8. He believed that to the extent Fred retained any interest in the property after he and his partner executed the 1988 deed, it was an interest held in constructive trust for his parents. *Id.* at 8. As such, his interest would not constitute property of the estate, and his transfer of that interest in 1995 would not be subject to avoidance under section 548(a). *Id.; see Marrs–Winn*, 103 F.3d at 589; *In re Maple Mortgage, Inc.*, 81 F.3d 592, 595 (5th Cir.1996).

The trustee appealed the adverse decision, and Judge Riley of the district court affirmed. The district judge expressed some doubt as to the bankruptcy court's initial holding that Fred, as one of the joint tenants identified on the 1988 deed, held only "bare legal title" rather than any equitable interest in the property. District Mem. & Order at 9. Fred's rights vis a`vis the property were defined by Illinois law, Judge Riley pointed out, yet the bankruptcy court had cited no Illinois precedents in support of the notion that Fred held a legal rather than an equitable interest in the property. *Id.*

The judge thus turned to the alternative theory that Fred held an interest in trust for his parents. He did not believe that a constructive trust was a viable theory on the facts of the case, because that type of trust is imposed as a remedy to prevent unjust enrichment in cases of wrongdoing. *Id.* at 10–11. Fred suggested, however, that the court could impose a resulting trust on the property. "'A resulting trust, unlike a constructive trust, seeks to carry out a donative intention rather than to thwart a wicked scheme.'" *Id.* at 11, quoting *American Nat'l Bank & Trust Co. of Rockford, Ill. v. United States*, 832 F.2d 1032, 1035 (7th Cir.1987). Typically, a resulting trust is imposed where one individual pays for the property but the title is placed in another's name; the second individual is deemed to hold the property in trust for the first. *See Wilson, supra,* 43 Ill.Dec. 23, 410 N.E.2d at 26–27; *In re Estate of Koch*, 297 Ill.App.3d 786, 232 Ill.Dec. 189, 697 N.E.2d 931, 933 (Ill.App. 1998); *In re Estate of McCormick*, 262 Ill.App.3d 163, 199 Ill.Dec. 502, 634 N.E.2d 341, 344 (Ill.App.1994); *Treschak v. Yorkville Nat'l Bank*, 237 Ill.App.3d 855, 178 Ill.Dec. 558, 604 N.E.2d 1081, 1083 (Ill. App.1992). Fred, noting that his parents had supplied the funds to purchase the property in 1982, had paid for the construction of the house in 1988, had occupied the property exclusively since that time, and had paid all real estate taxes and insurance costs, argued that this was precisely the situation in which a resulting trust should be declared. However, Illinois law presumes that when a deed lists two family members as joint tenants, only one of whom supplied the consideration for the property, the supplier of consideration is making a gift of one-half of the title and beneficial interest in the property to the other joint tenant. District Mem. & Order at 12, citing *Treschak*, 178 Ill.Dec. 558, 604 N.E.2d at 1083. Clear and convincing evidence that no gift was intended, and that instead the supplier of consideration was to hold the entire equitable interest in the property, is required to overcome that presumption and open the door to declaration of a resulting trust. *See Wilson*, 43 Ill. Dec. 23, 410 N.E.2d at 27; *Koch*, 232 Ill.Dec. 189, 697 N.E.2d at 933; *McCormick*, 199 Ill.Dec. 502, 634 N.E.2d at 345; *Treschak*, 178 Ill.Dec. 558, 604 N.E.2d at

---

4. The Code provides:

Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest ... becomes property of the estate ... only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

11 U.S.C. § 541(d).

1083–84. Here, Judge Riley found it to be undisputed that John and Ann had placed Fred and Joyce on the 1988 deed to their property solely as an estate planning device to avoid probate. District Mem. & Order at 13, 14–15. This evidence was sufficient, in his view, to overcome the presumption that John and Ann had made a gift of a one-half interest in the property to their son and daughter-in-law. *Id.* at 15.

> John and Ann intended themselves as sole holders of the present and beneficial interest in the subject property. Fred and Joyce were intended as "bare legal title" holders. Illinois law dictates a resulting trust in favor or John and Ann, entitled to the full equitable interest, for the subject property.

*Id.* at 15–16.

## II.

■ On appeal to this court, the trustee argues that the record does not support the district court's declaration of a resulting trust. The asserted fact that Fred's name was placed on the 1988 deed as a means to avoid probate cannot be sufficient, he reasons, to support the creation of a resulting trust. And even if it can suffice, the record as he reads it contains no direct testimony that this was John and Ann's sole purpose in placing Fred's name on the deed. John Kisak did testify that avoiding probate was the motivation for titling the property in this way. Transcript of Proceedings before Hon. Larry L. Lessen at 84–85 (Bankr.S.D.Ill. Nov. 17, 1997) (hereafter, "Tr.") "However, no one testified that they understood that neither Fred nor Joyce was to have any interest, other than an estate claim, either in or out of probate court." Trustee Br. 17. Whether it was appropriate for the district court to declare a trust typically presents a mixed question of fact and law subject to review for clear error. *In re Teranis*, 128 F.3d 469, 471 (7th Cir.1997). The trustee argues for de novo review, however, point-

ing out that the resulting trust theory was first raised before the district court and thus was never considered by the bankruptcy judge, who of course heard the evidence.

■ Having reviewed the record, however, we find that we need not consider whether the evidence supported the declaration that a resulting trust existed in favor of John and Ann Kisak. Recall that the existence of the trust is relevant for purposes of establishing the nature of the property interest that Fred transferred to his parents and his wife pursuant to the 1995 deed. In order for the trustee to obtain relief under section 548(a)(1)(A) or (B), there must have been a "transfer of an interest of the debtor in property." The transfer of a property interest that the debtor holds in trust for another person will not qualify for this purpose. *See In re Maple Mortgage, supra,* 81 F.3d at 595. If, as the trustee argues, the evidence introduced below is not sufficient to establish a resulting trust, then it may be the case that the interest Fred transferred in 1995 was "an interest of the debtor in property," and his failure to obtain adequate consideration in exchange for the transfer enables the trustee to have the transfer voided (and ultimately to sell the interest for the benefit of the bankruptcy estate). What the trustee has overlooked, however, is that section 548(a)(1) requires proof of circumstances in addition to the debtor's transfer of a property interest before the transfer can be deemed fraudulent and set aside.

■ In order to obtain relief under section 548(a)(1)(B), the trustee must establish not only that the debtor transferred an interest in property for less than reasonably equivalent value, 11 U.S.C. § 548(a)(1)(B)(i), but also (insofar as is relevant here) that the debtor "was insolvent on the date such transfer was made, ... or became insolvent as a result of such transfer...." *Id.* § 548(a)(1) (B)(ii).[5] The

---

5. This is merely one of several circumstances that will (in conjunction with the transfer of

debtor's insolvency at the time of, or as a result of, the transfer is highly material, because it is the state of impecuniousness that casts the shadow of constructive fraud upon the transaction. The bankruptcy judge specifically addressed this element of the claim:

> Finally, and significantly, there is no evidence in the record to suggest that Fred was insolvent when the transfer was made or that the transfer rendered him insolvent. Hence, the requirement of [section 548(a)(1)(B)(ii) ] has not been satisfied.

Bankruptcy Op. at 7. That finding constitutes an adequate and independent basis for the judgment against the trustee; and unless we are convinced that the bankruptcy court was wrong on this point as well (the issue was not raised in the district court, see Bankr.R. 39 (Adv. No. 97–4027)), then there would be no reason to disturb the judgment. Yet, there is no mention of this issue in the trustee's opening brief, and notwithstanding the Kisaks' mention of it in their own brief (Kisak Br. 14), the trustee's reply brief is silent on this score as well (Reply Br. 7). He has therefore forfeited any contention that the bankruptcy court's finding was erroneous. See, e.g., Finance Investment Co. (Bermuda) Ltd. v. Geberit AG, 165 F.3d 526, 531 (7th Cir. 1998); Kauthar SDN BHD v. Sternberg, 149 F.3d 659, 668 (7th Cir.1998), cert. denied, —— U.S. ——, 119 S.Ct. 890, 142 L.Ed.2d 788 (1999).

■ As we noted in summarizing the history of this litigation, the trustee did alternatively argue below that Fred executed the 1995 quitclaim deed with the actual intent to hinder, delay, or defraud his creditors. See 11 U.S.C. § 548(a)(1)(A). Judge Lessen specifically found that Fred lacked any such intent, however. Bankruptcy Op. at 6. The trustee challenged that finding on appeal, see Bankr.R. 39 (Adv. No. 97–4027), but Judge

Riley, after concluding that Fred's interest in the property was limited to that of a resulting trustee, found no need to reach the issue. District Mem. & Order at 16. If the bankruptcy court's finding on this point were clearly erroneous, see, e.g., In re Sherman, 67 F.3d 1348, 1353 (8th Cir. 1995), then we would have to confront the question of whether the 1995 deed amounted to a "transfer of an interest of the debtor in property." § 548(a)(1). Again, however, the trustee has forfeited the issue. Not until his reply brief did the trustee invoke section 548(a)(1)(A), and as our cases make clear, that is too late. E.g., Finance Investment Co., 165 F.3d at 531.

■ In a final effort to realize at least some money for the benefit of Fred's creditors, the trustee invokes 11 U.S.C. § 363(h) and seeks permission to sell the interest, however limited, that Fred purported to convey in the 1995 quitclaim deed. Not surprisingly, neither the bankruptcy court nor the district court considered this request, each of them having rejected the trustee's effort to set aside the 1995 conveyance pursuant to section 548(a)(1)(A) and (B). The trustee renews the request here, emphasizing that even if, as the lower courts concluded, Fred held only a future, contingent interest in his parents' property, that interest ought to be deemed property of the estate pursuant to section 541(a). Trustee Br. 19; see In re Yonikus, 996 F.2d 866, 869 (7th Cir.1993) ("every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541"). As a practical matter, of course, Fred's future interest could not be sold apart from Joyce's future interest in the property, but that is why the trustee invokes section 363(h), which would permit him to sell both interests and take an appropriate share of the proceeds.[6]

However, the trustee misses the fundamental point that having lost in the effort

---

property for inadequate consideration) support relief under section 548(a)(1)(B), see

§ 548(a)(1)(B)(ii)(II) and (III), but it is the only one that the trustee has ever relied upon.

**6.** The statute provides:

to set aside the 1995 conveyance of Fred's interest in the property, there is no interest—future or otherwise—available to him for disposition. There is no dispute that whatever interest Fred held prior to 1995, he conveyed to his parents and wife via the 1995 quitclaim deed. *See* Plaintiff's Ex. 4; Bankr.R. 32 at 3 ¶ 12 (Adv. No. 97–4027); Tr. 14. Therefore, only if the 1995 transaction were set aside would there be any interest that could arguably be considered property of the estate. But the lower courts rejected the trustee's claim that the conveyance was fraudulent under either section 548(a)(1)(A) or (B), for reasons in addition to and independent of their assessment of the nature of the interest that Fred held in 1995. The trustee's request to dispose of that interest pursuant to section 363(h) is therefore moot. Moreover, as the Kisaks point out, section 363(h) conditions the sale of an undivided interest on several criteria, *see* § 363(h)(1)–(4) quoted in n. 6, *supra*, which the trustee did not address below and has not addressed adequately in the briefing before this court.

### III.

For the reasons discussed, we AFFIRM the district court's judgment, which in turn affirmed the bankruptcy court's denial of relief to the trustee under section 548(a)(1) of the Bankruptcy Code.

Notwithstanding subsection (f) of this section [which, under certain specified conditions, permits the sale of the estate's interest in property free and clear of the interests of others], the trustee may sell both the estate's interest ... and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—
  (1) partition in kind of such property among the estate and such co-owners is impracticable;
  (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
  (3) the benefit to the estate of a sale of such property free of the interests of such co-owners outweighs the detriment, if any, to such co-owners; and
  (4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.
11 U.S.C. § 363(h).