No. 3-03-0399

_____________________________________________________________________________

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2004

 ) 

In re MARRIAGE OF ) Appeal from the Circuit Court

KAREN KENDRA, ) for the 13th Judicial Circuit,

) Grundy County, Illinois

Petitioner-Appellee, ) 

) 

and )

) 

 ) 

DAVID KENDRA, ) 

)

Respondent-Appellant )

) No. 01--D--60

)

(Larry Rinkenberger and            ) 

Gwendolyn J.  Rinkenberger, ) 

)

Intervenors-Appellees). ) Honorable Robert C. Marsaglia

) Judge Presiding 

______________________________________________________________________________

JUSTICE McDADE delivered the opinion of the court:

______________________________________________________________________________

This appeal from the circuit court of Grundy County involves a dispute over the nature of a transfer of interest in property between the petitioner, Karen Kendra, and the respondent, David Kendra, on the one hand, and intervenors, Larry and Gwendolyn Rinkenberger, on the other.  The respondent argues that the property was a gift from the intervenors to the petitioner and respondent, while the intervenors contend that the property was placed in a resulting trust for the use of the respondent and petitioner.  For the following reasons, we find in favor of the respondent, David Kendra, and reverse. 

FACTS

The petitioner, Karen Kendra, and the respondent, David Kendra, were married on September 27, 1980, and were divorced on August 24, 2001.  The intervenors, Larry and Gwendolyn Rinkenberger, are the parents of Karen Kendra.

The property at the center of the dispute is a 40-acre tract of undeveloped land in rural Hancock County.  The property was part of a 120-acre property purchased by Larry Rinkenberger on May 6, 1998.  At the time of purchase, the property was divided into three 40-acre tracts.  The tracts were conveyed separately by warranty deeds to Larry and Gwendolyn Rinkenberger, David and Karen Kendra, and Thomas and Lynn Haas, another daughter and son-in-law of Rinkenberger.  The Kendra acreage was never conveyed to the Rinkenbergers by the seller.  Neither the Kendras nor the Haases were present at the closing.

Rinkenberger testified that he deeded the property to his daughters and their spouses in order to encourage David Kendra and Thomas Haas to begin hunting and to guarantee them free hunting licenses rather than having them take their chances for a paid license in the annual lottery.  The testimony of Karen Kendra and Thomas Haas supported this assertion.  David Kendra’s testimony confirmed his understanding that the property was for hunting and that he was able to get a free hunting permit by owning it.

By December 1998, the Kendra marriage had begun to deteriorate.  At about that time, approximately eight months after the land purchase, Rinkenberger prepared a $28,000 promissory note which was executed on December 25
 by Karen.  Although the document itself contains no indication of the reason for the debt and makes no reference to or attempt to bind David, it is agreed by the parties to the note that it was for the purchase price of the 40 acres held in joint tenancy by Karen and David Kendra.  Both Rinkenberger and Karen testified that the note was to serve as evidence that the property still belonged to Rinkenberger.  Only in the event that Rinkenberger decided to convey the beneficial interest that he claimed to have retained would he seek satisfaction on the note.

Nearly two years after signing the promissory note, and one month after her divorce became final, Karen executed a quit claim deed to Rinkenberger, relinquishing all of her rights to the property.  Rinkenberger testified that the deed foreclosed any possibility that he would seek satisfaction on Karen’s note.  Apart from acknowledging that David owed him no money as a result of the note, it is unclear from the record what legal effect, if any, Rinkenberger anticipated with regard to his former son-in-law.

On November 27, 2001, Rinkenberger petitioned to intervene in David and Karen’s dissolution proceedings and filed a complaint for declaratory judgment claiming that the 40-acre property had not been a gift to the Kendras but was, rather, a resulting trust.  After a bench trial, the court entered judgment finding that the Rinkenbergers were the beneficial owners of the property by virtue of a resulting trust.  The respondent appeals.

ANALYSIS

The respondent argues on appeal that the trial court erred in finding that Larry and Gwendolyn Rinkenberger created a resulting trust when they purchased the subject property and placed it in the names of respondent and his wife.  Respondent asserts that the property was a gift to Karen Kendra and himself.

The decision of the trial court following a bench trial should be overturned only if it is against the manifest weight of the evidence.  
Judgment Services Corp.  v. Sullivan, 
321 Ill. App. 3d 151, 154, 746 N.E.2d 827, 830 (2001).  A decision is against the manifest weight of the evidence when the opposite conclusion is apparent or when the ruling is unreasonably arbitrary or not based on the evidence.  
Sullivan, 
321 Ill. App. 3d at 154, 746 N.E.2d at 831.  The party asserting a resulting trust must prove its existence by clear and convincing evidence.  
Sullivan, 
321 Ill. App. 3d at 154, 746 N.E.2d at 831.

A resulting trust originates when a party purchases property with his own funds then places title to the property in the name of another, but actually intends to retain legal ownership for himself.  
Sullivan, 
321 Ill. App. 3d at 154, 746 N.E.2d at 831.  A resulting trust arises at the time of the conveyance, and its existence is determined by the intent of the purchasing party at that time.  
In re Estate of Koch, 
297 Ill. App. 3d 786, 788, 697 N.E.2d 931, 933 (1998).  The intent of the parties is determined by their conduct and relationship and surrounding the circumstances.  
Carlson v. Carlson, 
74 Ill. App. 3d 673, 675, 393 N.E.2d 643, 645 (1979).  Because the law of resulting trusts was created to enforce the intent of the parties, certain rebuttable presumptions have arisen.  
Sullivan, 
321 Ill. App. 3d at 154, 746 N.E. 2d at 831.  Relevant to this case, it is presumed that the placement of title in the name of a child by a parent is a gift, rather than a resulting trust.  
Sullivan, 
321 Ill. App. 3d at 155, 746 N.E.2d at 831.  This is so because a child is the natural object of the bounty of the person paying the purchase price.  
Sullivan, 
321 Ill. App. 3d at 155, 746 N.E.2d at 831.  A resulting trust will not be found where the transaction can be construed in any other reasonable fashion.  
Sullivan, 
321 Ill. App. 3d at 155, 746 N.E.2d at 831.

The intervenors cite the case of 
Varap v. Varap, 
76 Ill. App. 2d  402, 222 N.E.2d 77 (1966), for the proposition that the presumption of gift is destroyed by the fact that the property was placed in the names of both the intervenors’ daughter and son-in-law.  In 
Varap, 
the court found that the presumption of gift did not arise when title was placed in the name of a child-in-law.  
Varap
, 76 Ill. App. 2d at 413, 222 N.E.2d at 84.

The validity of the holding in 
Varap 
is called into question by 
In re Estate of McCormick, 
262 Ill. App. 3d 163, 634 N.E.2d 341 (1994), and by 
Sullivan.  
In 
McCormick, 
the court implicitly extended the presumption of gift to a daughter-in-law when the property was transferred to the payor’s son and son’s wife in joint tenancy.  
McCormick, 
262 Ill. App. 3d at 170, 634 N.E.2d at 346.  In 
Sullivan, 
the court expressly called into question the ruling in 
Varap, 
and found that the presumption of gift arose for a son-in-law just as it would for a natural child.  
Sullivan, 
321 Ill. App. 3d at 158-59, 746 N.E.2d at 834.  In light of these cases, the law now includes a presumption of gift with respect to transfers to sons- or daughters-in-law.  Therefore, the presumption arises in this case with respect to the respondent.

The question then is whether there is clear and convincing evidence to rebut the presumption of gift and establish that the intervenors intended, at the time of transfer, to create a resulting trust.  This was the approach adopted by the trial court.  We consider that question and the court’s decision mindful of 
Sullivan
’s instruction that a resulting trust should not be found if there is any other reasonable construction of the transaction.

As the respondent points out, there is no documentary evidence (including Rinkenberger’s decision to transfer by warranty deed) which establishes that the intervenors intended a resulting trust.  Nor did Rinkenberger say anything to anyone at the time of transfer to indicate that this was merely a conveyance of convenience and that he intended to retain legal ownership of the property.

The record discloses some circumstantial evidence that could be interpreted as indicating that a resulting trust was intended.  The court found the testimony that supported the intervenors’ assertion of a trust to be credible and consistent.   We review the evidence to assess whether the same testimony can also be interpreted as supporting respondent’s contention that the property was a gift to him and his wife.  If it can, the argument for a resulting trust must fail.

The evidence established that Rinkenberger purchased a 120-acre lot with his own funds and that he requested that two 40-acre parcels be placed in the names of his two daughters and their spouses.  As shown by the testimony of Rinkenberger, Thomas Haas, and David Kendra, the purpose of deeding the two portions to his sons-in-law was to encourage them to hunt and to facilitate their doing so by making them landowners and thereby ensuring that they could get the annual hunting license without chancing being bypassed in the lottery.  (Despite this stated purpose, he also had his daughters included on the warranty deeds.)  Moreover, Rinkenberger paid the annual $65 property taxes for all years after the purchase except for 2001, when David Kendra paid them for the lot in his name.  Rinkenberger also managed the agricultural business conducted on his 40-acre tract, which contained the only arable portion of the 120 acres, stored some trail-clearing equipment on the Haas parcel, and cleared trails on both the Haas and Kendra lots.  We note that all of these facts are as consistent with the presumption of gift for the stated purpose as they are with resulting trust. 

 Haas testified to his belief that the transfers were not gifts.  Kendra, however, testified that he believed that his property was a gift, even though he had only hunted the property three times since it was titled in his name and could not say that an intent to make a gift was ever actually expressed to him.  Both recounted that Rinkenberger’s stated purpose for the land conveyances was to encourage them to hunt.  This evidence of what others believed and what others did or did not do sheds little or no probative light on the issue of the actual intent of the Rinkenbergers at the time the transfer was made.

In the absence of any information from Gwendolyn Rinkenberger, we focus on what is disclosed by the testimony and the actions of her husband to determine their intent at the time of transfer.  As we have already noted, Rinkenberger said nothing of an intent to create a trust or retain legal ownership of the land at the closing or within that general time frame.  He did not take title and then transfer the property but rather directed that the parcels be conveyed by the original owner by warranty deeds.  Although the deeds did contain some exceptions, the conveyances were made, without any reservation of his own rights, to his daughters and their spouses in joint tenancy.  

Rinkenberger did not testify, nor does the record otherwise reveal, that he told them he was only 
lending
 them the property until further notice.  Indeed, although he was asked several times if he had ever expressly told any relevant person that he was giving them the land as a gift, he was never asked whether he had told them it was not a gift or that he was not really giving it to them or that he was still the owner, with or without reference to a trust.  Karen Kendra and Thomas Haas testified that they knew the property was not a gift but did not say when or how they had gained this knowledge.  

The promissory note 
suggests
 that it was not until he realized that Karen’s marriage was in trouble that he began rethinking the wisdom of gifting the land.  There is some support for this suggestion in the fact that, although David was present at the family gathering on December 25
 and was a titleholder, he was not included on the note.  In fact, Rinkenberger’s creation of the note in December rather than May of 1998 is suggestive of a later determination to hold onto the land for himself and his wife rather than one contemporaneous with the purchase.  Other evidence concerning whether the property was listed as part of a financial disclosure for a bank loan or claimed in its entirety for income tax purposes invites inference or speculation without leading to a definitive conclusion. 

We do not challenge the court’s credibility findings.  After reviewing the record, however, we do not believe that clear and convincing evidence that the intervenors intended, at the time of the conveyance, to retain ownership of the property, thereby creating a resulting trust, was actually presented to the court.  

CONCLUSION

Rinkenberger testified that he never intended to gift the 40-acre tracts but rather to retain ownership of them.  Arrayed against this testimony is a variety of other evidence which either supports the presumption of gift or can be reasonably interpreted as consistent with either a gift or a resulting trust.  There is nothing other than his statement that rebuts the presumption.  Given the standard set out in 
Sullivan, 
we believe a finding that a resulting trust was created at the time of the conveyances has been proven by clear and convincing evidence is contrary to the manifest weight of the evidence.

For the foregoing reason, the judgment of the circuit court of Grundy County is reversed.

Reversed.

LYTTON and O’BRIEN, JJ., concur.