**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 210360-U

Order filed December 22, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| TYLER A. Z., | ) | Appeal from the Circuit Court |
| | ) | of the 21st Judicial Circuit, |
| Petitioner-Appellant, | ) | Iroquois County, Illinois, |
| | ) | |
| v. | ) | Appeal No. 3-21-0360 |
| | ) | Circuit No. 20-F-16 |
| | ) | |
| LAUREN A. R., | ) | Honorable |
| | ) | Michael Sabol, |
| Respondent-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court.
Justices Daugherity and O'Brien concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  The court's decision to grant mother's petition to relocate out of state with the minor children was not against the manifest weight of the evidence.

¶ 2    The petitioner, Tyler A. Z., appeals from the circuit court's judgment granting the petition to relocate filed by the respondent, Lauren A. R.

¶ 3                                          I. BACKGROUND

¶ 4    The record on appeal does not contain a report of proceedings. Instead, the parties agreed on a bystander's report pursuant to Illinois Supreme Court Rule 323(c) (eff. July 1, 2017), which was certified by the circuit court on September 20, 2021.

¶ 5    Tyler and Lauren began dating on and off in 2015 and had two children together, B.R. in 2017 and C.R. in 2018. Their relationship ultimately ended in October 2019. On July 9, 2020, Tyler filed a petition to establish parentage and for an allocation of parental responsibilities and parenting time. He then filed an emergency petition to return the children to Illinois on August 27, 2020, because Lauren and the children moved to Michigan without notice.

¶ 6    After a hearing, the court granted Tyler's emergency petition on March 8, 2021, ordering Lauren to return to Illinois with the children on or before May 15, 2021. The court's written order stated that Tyler was still involved in the lives of the children; the evidence did not indicate an impact on Lauren's financial, physical, or emotional health; the statutory factors favored Tyler; and the court did not find any evidence of domestic violence that would preclude the injunctive relief sought.

¶ 7    On March 11, 2021, Lauren filed a notice of intent to relocate and a petition to relocate, and a hearing was held on May 12, 2021. The court stated that it would take judicial notice of all the evidence presented at the prior proceedings. Therefore, the following contains a summary of the evidence as presented at all hearings in this case.

¶ 8    Tyler and Lauren lived together in multiple places in Illinois over the course of their relationship before ultimately moving into Tyler's parents' home in Loda, Illinois, in April 2019. Tyler and Lauren's relationship dissolved on October 20, 2019. However, Lauren remained living there until October 23, 2019. On that day, Tyler and Lauren got into an argument about money, Lauren swore at Tyler's mother, and Tyler's father asked Lauren to leave the house. Lauren had

2

been on the phone with her aunt, Melissa Gillons, who overheard the argument and called the police to do a welfare check on Lauren. Officer Vincent Laffoon found Lauren in her car outside Tyler's parents' residence. Lauren told Laffoon that she did not need assistance. Lauren, the children, and some belongings were in the car, and Lauren was on the phone with her father, looking for a place to stay.

¶ 9        Lauren secured a residence a couple of blocks away three days later, in a gated community in Loda for $700 per month plus the cost of utilities. Tyler went to Lauren's house to see the children on November 12, 2019, when an argument ensued. Lauren stated that Tyler chased her down the hall and pushed her to the floor from behind. As a result of the incident, Tyler was charged with domestic battery but the charge was later dismissed. Tyler denied touching her during this altercation.

¶ 10        Tyler's mother provided care for the children at times when the children lived with her and again for a few months at the beginning of 2020 when they did not go to daycare. Tyler's parents had a strong relationship with the children. Lauren's dad and sister lived in Illinois, but both testified that they were not particularly close with Lauren or her children. Lauren and her dad saw each other about once a month and would exchange text messages. He provided some financial support to Lauren: co-signing on her lease for her home in Illinois, and paying for her vehicle, vehicle's title, and insurance when she could not afford it, though Lauren would sometimes pay him back. He stated he would continue to provide support to Lauren if he could afford it. Lauren's sister stated that they saw each other only five or six times in 2020 and texted occasionally. Both Lauren's father and sister had plans to move to Missouri.

¶ 11        Tyler continued to live with his parents until April 2020, when he moved to Leroy, Illinois, about an hour away. He worked as a foreman and crane operator and worked, on average, 10 hours

per day, including overtime. He worked approximately 45 hours of overtime a month. Lauren stated that prior to November 2019, Tyler often worked long hours and was not home before the children went to bed.

¶ 12        Lauren had been employed by Carle Hospital in Champaign, Illinois, as a healthcare technician until her termination on June 27, 2020. She had worked 35 to 40 hours a week for $14.86 an hour. The day she was terminated, she called Gillons, who offered her a job doing administrative work at a plumbing company owned by Gillons's husband in Hastings, Michigan. She had been concerned about finding work, so she took the job right away. Her new position paid $15 per hour for 40 hours a week, though over the course of her employment, she had received multiple raises due to her strong job performance and was making $18 per hour at the time of the relocation hearing. Gillons stated that there was no limit as to what Lauren could make, and Lauren stated that she saw this as her permanent career.

¶ 13        When Lauren first began working in Michigan, she would stay there three to four days per week, and the children would spend the time they were not in daycare with Tyler and his parents. Tyler was not always present when the children stayed the night at Tyler's parents' house, due to work and the fact that he lived an hour away. This arrangement continued until July 23, 2020, when Lauren stopped dropping the children off at Tyler's parents' house. Tyler had the children the last weekend in July 2020. He had agreed to exchange the children with Lauren at 6 p.m. on July 26, 2020, but Lauren arrived at his apartment with a police officer at 10 a.m. to pick up the children. After this time Lauren would not answer Tyler's phone calls or return his text messages. On August 7, 2020, Lauren texted Tyler, stating that she had moved to Hastings, Michigan with the children. Lauren texted Tyler, "You'll only see me soon if they're successful in serving me.

4

Getting to court, change of venue, agreeing to parenting time etc[.] etc[.] could be 4-5 months[.]" Tyler stated that he had no notice of the move.

¶ 14    At the time of the relocation hearing, the parties had agreed to a temporary order, giving Tyler parenting time every other weekend from Friday at 5 p.m. Eastern Time to Sunday at 5 p.m. Eastern Time. The parties would meet at a gas station in Portage, Indiana, to exchange the children. During the summer, the parties were given rotating weeks of parenting time. The court had further ordered that Lauren was to receive temporary child support in the amount of $1,102.45, based on Tyler's monthly gross income of $5,840.69 and Lauren's monthly gross income of $2,377.

¶ 15    Lauren was residing in a three-bedroom home along a lake in Hastings. It cost $1,500 per month but included some of the utilities she had to pay separately when she rented the $700 per month home in Loda. She stated that her pay increase, child support, and tax refunds made up the difference in monthly expenses. Lauren's cousin, Alexi Ferrell, lived 15 minutes from Lauren in Hastings and worked with her at the family plumbing business. She saw Lauren most weekends and occasionally provided childcare. Gillons lived three minutes away from Lauren in Hastings. Gillons moved to Michigan in 2009, but Lauren and Gillons became close in 2017 when Lauren's mother was diagnosed with cancer. Lauren confided in Gillons. Gillons testified that Lauren had a strong support system in Hastings whenever she needed them. Tyler stated that, during the course of their relationship, he had only seen Ferrell once and Gillons twice.

¶ 16    Lauren stated that she was the primary caregiver, took the children to appointments, arranged their daycare, and signed them up for extracurricular activities. She stated that Tyler refused to help with or participate in selecting childcare or extracurriculars. Lauren had requested Tyler's help with the children on March 9, 2020, because she was sick, but Tyler refused. Tyler had stated in multiple text messages that "work will always come before family." While Tyler had

5

been unable to attend his daughter's horseback riding due to work, he would be able to attend future extracurricular activities as long as they were after 7 p.m. Lauren did some research on the schools in Hastings, Michigan, and according to niche.com, the school the children would be attending was slightly better than the one they would have attended in Illinois.

¶ 17    She began looking for jobs in Illinois once the court granted the emergency petition. She stated that she applied for approximately 30 jobs across many fields but received very few interviews and no offers. She also could not find any suitable housing in Iroquois County, Illinois. The only home she found was taken before she could make contact with the owner. Lauren testified that she would keep Tyler informed of any healthcare, educational, or extracurricular issues with the children and ensure that he had access to all records. She believed the parenting time and exchange was working well and was willing to agree to give Tyler extended time during holidays, school breaks, and summer vacation.

¶ 18    Tyler stated his concern that he would not be included in events and milestones for the children if they continued to reside in Michigan. Tyler stated that there were already communication issues between him and Lauren. He was denied Facetime calls with the children on four occasions and had not been given certain healthcare information when requested, though he did receive some of the healthcare information later. He introduced into evidence the complete set of text messages between Tyler and Lauren between October 1, 2020, and December 28, 2020, to support this assertion. He believed Illinois was the best place for the children to stay, as they had lived their whole lives there.

¶ 19    The court granted the petition to relocate on July 9, 2021. The written order stated, "For reasons set forth in open court on July 9, 2021, [Lauren's] Petition to Relocate is granted as it is in the best interests of the minor children that [Lauren] be allowed to relocate with the minor children

6

to Hastings, MI." The bystander's report indicates that the court stated that it considered all of the relevant factors of section 609.2(g) of the Illinois Marriage and Dissolution of Marriage Act (Act), including the portion that stated that "[t]he court may consider a parent's failure to comply with the notice requirements of this Section without good cause *** as a factor in determining whether the parent's relocation is in good faith." 750 ILCS 5/609.2(g) (West 2020). The court stated that it considered Lauren's failure to give proper notice but did not find that to be a determining factor against relocation.

¶ 20                                                    II. ANALYSIS

¶ 21        On appeal, Tyler argues that it was a manifest injustice and against the manifest weight of the evidence for the court to grant Lauren's petition to relocate. A parent with the majority of parenting time may seek to relocate with the children. 750 ILCS 5/609.2(b) (West 2020). When ruling on a petition to relocate, the court considers the following factors:

> "(1) the circumstances and reasons for the intended relocation;
>
> (2) the reasons, if any, why a parent is objecting to the intended relocation;
>
> (3) the history and quality of each parent's relationship with the child and specifically whether a parent has substantially failed or refused to exercise the parental responsibilities allocated to him or her under the parenting plan or allocation judgment;
>
> (4) the educational opportunities for the child at the existing location and at the proposed new location;
>
> (5) the presence or absence of extended family at the existing location and at the proposed new location;
>
> (6) the anticipated impact of the relocation on the child;

7

(7) whether the court will be able to fashion a reasonable allocation of parental responsibilities between all parents if the relocation occurs;

(8) the wishes of the child, taking into account the child's maturity and ability to express reasoned and independent preferences as to relocation;

(9) possible arrangements for the exercise of parental responsibilities appropriate to the parents' resources and circumstances and the developmental level of the child;

(10) minimization of the impairment to a parent-child relationship caused by a parent's relocation; and

(11) any other relevant factors bearing on the child's best interests." 750 ILCS 5/609.2(g) (West 2020).

¶ 22    The burden of proving the move would be in the children's best interest lies with the parent seeking the relocation. *In re P.D.*, 2017 IL App (2d) 170355, ¶ 30. When reviewing a circuit court's relocation decision, we give it great deference as it is in the best position to consider all the relevant facts and observe the credibility of the witnesses, and we will not reweigh the evidence or reassess the credibility determinations. *Id.* ¶¶ 18-19. There is a strong presumption in favor of the results reached by the circuit court. *In re Marriage of Dorfman*, 2011 IL App (3d) 110099, ¶ 46. We will only reverse the court's decision regarding a relocation petition if it is against the manifest weight of the evidence, *i.e.*, when the opposite conclusion is clearly apparent or the ruling is unreasonable, arbitrary, or not based on the evidence. *In re Marriage of Coulter*, 2021 IL App (3d) 100973, ¶ 25; *In re Marriage of Kendra*, 351 Ill. App. 3d 826, 829 (2004).

¶ 23    First, we note that Tyler argues that the relocation should not have been allowed because "[t]he plain language of the statute requires that there be an allocation of parenting time to seek to

relocate with the child," which he argues had not been done, here. Section 609.2(b) of the Act states, "A parent who has been allocated a majority of parenting time or either parent who has been allocated equal parenting time may seek to relocate with a child." 750 ILCS 5/609.2(b) (West 2020). We agree with Tyler that the plain language requires an allocation of parenting time to seek a relocation with the child. We find that Lauren was allocated a majority of the parenting time via a temporary agreed order. The statute only requires an allocation. Tyler's contention that an allocation must be made by other than a temporary agreed order has no merit. Further, Tyler has failed to cite any authority suggesting otherwise.

¶ 24    Second, Tyler argues that the court erred in considering the factors at the time of the relocation hearing, instead of at the time that Lauren moved with the children. Tyler has forfeited this contention by failing to cite any authority to support it. *Gakuba v. Kurtz*, 2015 IL App (2d) 140252, ¶ 19. We find that the record shows that the court considered all the evidence before it throughout the entirety of the proceedings, and it was proper for it to do so.

¶ 25    Lastly, Tyler states that the court erred in finding factors 1, 3, 5, 6, 7, and 10 in favor of Lauren. We construe this as an invitation to reweigh the evidence, which we will not do. See *P.D.*, 2017 IL App (2d) 170355, ¶ 19. Our review of the record shows that the court heard extensive evidence and thoroughly considered the circumstances of the case. It is undisputed that the court considered the applicable factors. We find ample evidence to support the court's decision.

¶ 26    Lauren wanted to relocate to Michigan because she lost her job and had been offered a job in Michigan. Her family in Illinois was not very close, but she had developed a strong bond with Gillons, who lived in Michigan, since the passing of her mother. Tyler states that the court failed to consider that Lauren constantly placed "roadblocks" to prevent him from seeing the children. However, the court considered all of the evidence presented and agreed with Tyler that Lauren

9

went about things the wrong way. While it weighed this fact with the rest of the evidence presented, it did not find that it was the determining factor. The court found that Lauren's motivation had not been to keep the children from Tyler.

¶ 27 Tyler's reason for objecting to the move was that he was concerned about the impact of the move on his relationship with the children. Nonetheless, Tyler's ability to see the children was already limited because of his work, which Tyler had stated would "always come before family." As the court found, Lauren clearly had always been the primary caregiver for the children. She made all the arrangements for daycare, school, medical treatment, and extracurricular activities. Again, this was likely due to Tyler's work schedule. Lauren stated that Tyler had missed the children's extracurricular activities, had shown no interest in helping make any arrangements for the children, and refused to provide her assistance when she had asked for it previously. The court noted that there was not much evidence presented regarding the educational opportunities in Michigan and Illinois but stated that what was presented seemed to suggest the schools were fairly similar.

¶ 28 There was no dispute that the children had a good relationship with Tyler's parents in Illinois. Lauren had family in Illinois, but she was not close with them and did not see them much. Lauren did have family—her aunt and cousin—in Michigan, with whom she and the children had developed a strong relationship. They provided some childcare and a good support system for Lauren and the children. The evidence did not support Tyler's contention that the relocation would result in financial ruin for Lauren and severely impact the children's quality of life. Tyler states that the only evidence the court should have considered regarding Lauren's financial situation was the financial affidavit entered into evidence. Tyler has not cited what page of the record this affidavit can be found, as required under Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020).

10

Moreover, our review of the record has not found the affidavit. "The appellate court is not a depository in which the appellant may dump the burden of argument and research." *Thrall Car Manufacturing Co. v. Lindquist*, 145 Ill. App. 3d 712, 719 (1986). Absent this, we find that the court properly considered the evidence before it regarding Lauren's financial situation. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984).

¶ 29        The evidence showed that the parties' arrangement of meeting halfway to exchange the children every other weekend was working out. The court found that it would be able to fashion a reasonable allocation of parenting time, since Lauren was moving only four hours away. Tyler would be provided with extra time in the summer and during school holidays. The children's wishes were not presented and were not considered by the court. Likewise, the arrangements for the exercise of parental responsibilities appropriate to the parents' resources and circumstances was found to be neutral. The court found that Tyler's relationship with the children would not be impaired. Again, considering the amount of hours Tyler worked, his relationship with the children was unlikely to be impacted. Tyler stated that, even if the children were living in Illinois, he would be unable to attend any extracurricular activities unless they happened after 7 p.m. He continued to receive the same parenting time as if the children still resided in Illinois and would be able to Facetime with them while they were in Michigan.

¶ 30        We conclude that the court's decision to grant the petition for relocation is supported by the record. We cannot say that an opposite conclusion is clearly apparent, or that the determination was objectively unreasonable, arbitrary, or contrary to evidence presented. Thus, the court's decision was not against the manifest weight of the evidence.

¶ 31                                III. CONCLUSION

¶ 32        The judgment of the circuit court of Iroquois County is affirmed.

¶ 33        Affirmed.